**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| HARRY GAO and ROBERTA SOCALL, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:14-cv-04281-PAC |
| v. | ) ) | |
| JPMORGAN CHASE & CO. and CHASE BANK USA, N.A. | ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ............................................................................................. 1

II.   FACTUAL BACKGROUND ........................................................................... 3

III.  MOTION TO DISMISS STANDARD .............................................................. 4

IV.   LEGAL ARGUMENT ..................................................................................... 5

    1.    The Amended Complaint Adequately States Claims for Breach of Express
        Contract and Breach of the Covenant of Good Faith and Fair Dealing....................... 5

        A.    The Amended Complaint Sufficiently States a Prima Facie Claim
               for Breach of Contract ........................................................................ .5

        B.    The Amended Complaint Adequately States a Claim for Breach of the
               Covenant of Good Faith and Fair Dealing.......................................... 8

    2.    The Amended Complaint Adequately States Claims for Fraudulent
        Inducement................................................................................................ 10

        A.    Plaintiffs Have Identified an Actionable Misrepresentation.............................. 10

        B.    Chase's Fraudulent Intent has been Adequately Pled and is Obvious
               from the Pleadings. ............................................................................. 13

        C.    Plaintiffs' Reliance on Defendants' Misrepresentations Was Reasonable
               and Justifiable. ................................................................................... 15

        D.    Fraudulent Inducement is an Appropriate Cause of Action in
               this Context. ...................................................................................... 16

    3.    The Unjust Enrichment Claim Should be Construed as an Alternative Claim
        in the Event the Contract is Deemed Invalid or Otherwise
        Unenforceable............................................................................................ 17

    4.    JP Morgan Chase & Co. Is Not Immune From Liability Under The Ohio
        Consumer Sales Practices Act Or The Florida Deceptive And Unfair Trade
        Practices Act. ........................................................................................... 20

V.    CONCLUSION................................................................................................ 22

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

<u>CASES</u>

*Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 2130607,
(Del. Ch. Aug. 26, 2005) .................................................................................................. 18

*Ameristar Casinos, Inc. v. Resorts Int'l Holdings, LLC*,
2010 Del. Ch. LEXIS 107 (Del. Ch. May 11, 2010) ........................................................ 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................... 5

*AstroPower Liquidating Trust v. KPMG LLP*,
2007 U.S. Dist. LEXIS 38222 (D. Del. May 25, 2007) ..................................................... 18

*Bae Systems Information and Electronic Systems Integration, Inc. v. Lockheed Martin Corp.*,
C.A. No. 3099-VCN, 2009 Del. Ch. LEXIS 17 (Del. Ch., February 3, 2009) ..................... 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................... 5

*Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
448 F.3d 573 (2d Cir. 2006) ............................................................................................. 10

*Brass v. Am. Film Technologies, Inc.*,
987 F.2d 142 (2d Cir. 1993) ...................................................................................... 12, 13

*Capitaliza-T Sociedad De Responsabilidad Limitada De Capital Variable v. Wachovia Bank of Del. N.A.*,
2011 U.S. Dist. LEXIS 146599 (D. Del. Dec. 21, 2011) .................................................. 20

*Carrow v. Arnold*,
No. CIV.A. 182-K, 2006 Del. Ch. LEXIS 191 11(Del. Ch. Oct. 31, 2006) ....................... 16

*Castagna v. Luceno*,
No. 09-CV-9332 CS, 2011 WL 1584593 (S.D.N.Y. Apr. 26, 2011) ................................... 5

*Chamison v. Healthtrust, Inc.*, 735 A.2d 912, 920 (Del. Ch. 1999), aff'd, 748 A.2d 407 (Del. 2000) ................................................................................................................................. 9

*Chestnut v. Whitehaven Income Fund I, LLC*,
2014 U.S. Dist. LEXIS 1198 (S.D.N.Y. Jan. 6, 2014) ..................................................... 19

*Chill v. Gen. Elec. Co.*,
101 F.3d 263 (2d Cir. 1996) ............................................................................................. 14

*Dart Brokerage Corp. v. Am. Commerce Ins. Co.*,
2013 U.S. Dist. LEXIS 160219 (S.D.N.Y. Nov. 7, 2013) ................................................. 20

*Davidowitz v. Patridge*,
No. 08 CV 6962 (NRB), 2010 U.S. Dist. LEXIS 132762 (S.D.N.Y. Dec. 7, 2010)) .............. 10

*Di Folco v. MSNBC Cable LLC*,
   622 F.3d 104 (2d Cir. 2010) ................................................................................. 5

*Doehla v. Wathne Ltd., Inc.*,
   98 Civ. 6087, 1999 U.S. Dist. LEXIS 11787 (S.D.N.Y., Aug. 3, 1999) ................. 15

*Dunlap v. State Farm Fire & Cas. Co.*,
   878 A.2d 434 (Del. 2005) ................................................................................. 8, 9

*Fitzgerald v. Chase Home Fin., LLC*,
   10-cv-4148 (CS), 2011 U.S. Dist. LEXIS 156395 (S.D.N.Y. Feb. 28, 2011) .......... 12

*Frontier-Kemper Constructors, Inc. v. Am. Rock Salt Co.*,
   224 F. Supp. 2d 520 (W.D.N.Y. 2002) ................................................................ 13

*Furman v. Delaware Department of Transportation*,
   No. N10C-10-164 CLS, 2014 Del. Super. LEXIS 347 (July 9, 2014) ..................... 7

*Grudkowski v. Foremost Ins. Co.*,
   556 Fed. App'x 165 (3d Cir. 2014) ..................................................................... 16

*Guiliano v. U.S. Nursing Corp.*,
   339 B.R. 570 (Bankr. D. Del. 2006) ................................................................... 19

*Hettinger v. Kleinman*,
   732 F. Supp. 2d 421 (S.D.N.Y. 2010) ................................................................. 10

*In re Blech Sec. Litig.*,
   961 F. Supp. 569 (S.D.N.Y. 1997) ...................................................................... 15

*In re Lois/USA, Inc.*,
   264 B.R. 69 (Bankr. S.D.N.Y. 2001) ................................................................... 10

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
   975 F. Supp. 621 (D.N.J. 1996) ......................................................................... 19

*Innovative Biodefense, Inc. v. VSP Techs.*,
   2013 U.S. Dist. LEXIS 95429 (S.D.N.Y. Jul. 3, 2013) .......................................... 10

*Iotex Commc'ns, Inc. v. Defries*,
   No. 15817, 1998 Del. Ch. LEXIS 236 (Del. Ch. Dec. 21, 1998) ........................... 16

*Janos v. Murduck*,
   672 N.E.2d 1021 (Ohio Ct. App. 1996) .............................................................. 21

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
   313 U.S. 487 (1941) ......................................................................................... 10

*McCaffrey v McCaffrey*,
   107 A.D.3d 1106 (N.Y. App. Div. 3d Dep't 2013) ............................................... 8

*MCG Capital Corp. v. Maginn*,
   2010 Del. Ch. LEXIS 87, 2010 WL 1782271 (Del. Ch. May 5, 2010) ................... 18

*Meyers v. Heffernan*,
   740 F. Supp. 2d 637 (D. Del. 2010) ................................................................... 20

*MIG Invs. LLC v. Aetrex Worldwide, Inc.*,
    852 F. Supp. 2d 493 (D. Del. 2012) ........................................................................ 20

*Moche v. Srour*,
    2013 N.Y. Misc. LEXIS 5040 (Sup. Ct. N.Y. Cty. Oct. 26, 2013) ......................... 19

*Mortgage Lenders Networks USA, Inc. v. Wells Fargo Nat'l Assoc.*,
    395 B.R. 871 (Bankr. D. Del. 2008) ....................................................................... 20

*Narrowstep, Inc. v. Onstream Media Corp.*,
    2010 Del. Ch. LEXIS 250 (Del. Ch. Dec. 22, 2010) ...................................... 17, 19

*Nash v. The New School*,
    05 Civ. 7174 (KMW)(FM), 2009 U.S. Dist. Lexis 36208, (S.D.N.Y. Apr. 29, 2009) ............ 13

*Nielsen v. Rabin*,
    746 F.3d 58 (2d Cir. 2014) ........................................................................................ 4

*Petra Mezzanine Fund, L.P. v. Willis*,
    2012 U.S. Dist. LEXIS 156529 (D. Del. Nov. 1, 2012) ......................................... 17

*Pinkert v. John J. Oliveiri P.A.*,
    Civ. A 99-380, 2001 WL 641737 (D.Del. May 24, 2001) ...................................... 16

*Pittsburgh Glass Works, LLC v. Henniges Auto. GmbH & Co. KG*,
    13-cv-4788, 2014 U.S. Dist. LEXIS 97629 (S.D.N.Y. July 14, 2014) .................... 14

*R. B. Ventures, Ltd. v. Shane*,
    112 F.3d 54 (2d Cir. 1997) ...................................................................................... 10

*REDUS Peninsula Millsboro, LLC v. Mayer*,
    2014 Del. Ch. LEXIS 161 (Del. Ch. Aug. 29, 2014) .............................................. 19

*Roling v. E*Trade Sec., LLC*,
    756 F. Supp. 2d 1179 (N.D. Cal. 2010) ................................................................... 18

*Rollins, Inc. v. Butland*,
    951 So. 2d 860 (Fla. Dist. Ct. App. 2006) .............................................................. 21

*Schlenger v. Fid. Emplr. Servs. Co., LLC*,
    785 F. Supp. 2d 317, 353 (S.D.N.Y. 2011) ............................................................ 12

*Segal v. Gordon*,
    467 F.2d 602 (2d Cir. 1972) .................................................................................... 14

*Shah v. American Solutions, Inc.*,
    No. N11C-07-196 JRJ, 2012 Del. Super. LEXIS 94 (March 8, 2012) ...................... 6

*Shively v. Mitchell*,
    13 Civ. 2164 (PAE), 2013 U.S. Dist. LEXIS 153024 (S.D.N.Y. Oct. 24, 2013) .................... 15

*Sogenti USA LLC v. Whirlwind Bldg. Sys. Inc.*,
    274 F. App'x 105 (2d Cir. 2008) ............................................................................. 12

*Stamelman v. Fleishman-Hillard*, Inc.,
    2003 U.S. Dist. LEXIS 13328 2003 WL 21782645 (S.D.N.Y. July 30, 2003) ........ 15

*Swift v. BancorpSouth, Inc. (In re Checking Account Overdraft Litig.)*,
   2013 U.S. Dist. LEXIS 154432 (S.D. Fla. Oct. 24, 2013)........................................ 18

*Temple v. Fleetwood Enters., Inc.*,
   133 Fed. Appx. 254 (6th Cir. 2006)........................................................................ 21

*Three Crown Ltd. P'ship v. Caxton Corp.*,
   817 F. Supp. 1033 (S.D.N.Y. 1993)....................................................................... 13

*Universal Am. Corp. v. Partners Healthcare Solutions Holdings, L.P.*,
   2014 U.S. Dist. LEXIS 100654 (D. Del. July 24, 2014) ........................................ 19

*VLIW Tech., LLC v. Hewlett-Packard Co.*,
   840 A.2d 606 (Del. 2003) ......................................................................................... 5

*Vogt v. Greenmarine Holding, LLC*,
   318 F. Supp. 2d 136 (S.D.N.Y. 2004)....................................................................... 5

*Wall v. CSX Transp. Inc.*,
   471 F.3d 410 (2d Cir. 2003).................................................................................... 10

*Wexner v. First Manhattan Co.*,
   902 F.2d 169 (2d Cir. 1990).................................................................................... 14

*Woods v. Maytag Co.*,
   10-CV-0559, 2010 U.S. Dist. LEXIS 116595 2010 WL 4314313 (E.D.N.Y. 2010) .............. 16

Plaintiffs Harry Gao and Roberta Socall, on behalf of themselves and all others similarly situated (collectively "Plaintiffs"), by and through their undersigned counsel, hereby respond to JPMorgan Chase & Co. ("JPMorgan") and Chase Bank USA, N.A.'s ("Chase Bank") (collectively "Chase" or "Defendants") Rule 12(b)(6) Motion to Dismiss.

## I.    __INTRODUCTION__

At the core of this case is the unjust and unwarranted taking of consumers' rightfully-earned credit card rewards points by Chase – one of the largest credit card issuers in the United States.[1]  Plaintiffs seek redress of this inequity through the filing of this class action lawsuit.

Every day in America, millions of Chase Rewards credit card holders purchase goods and services using incentive-based rewards credit cards.[2]  Chase Rewards cardholders, like other consumers, make purchases using these cards, in large part, because they have been promised that for every dollar they spend, they will earn points – redeemable for airline miles, hotel stays, merchandise, services, or cash.  These rewards points are not some theoretical asset.  The points have a contractually-defined, ascertainable, calculable value which is set forth in the Chase Rewards Program Rules and Regulations.[3]  Cardholders "earn one (1) point or 1% rebate for each $1 of Net Purchases." (See, Am. Compl., Exhibit A).  In addition, the Agreement also states that the rewards points/rebates do not expire.  *Id.*  However, thousands of Chase Rewards cardholders are shocked to discover, after Chase terminates their accounts, that at any time, for any reason – or no reason at all, Chase claims it can take all the rewards points the consumer has

---

[1] https://www.chase.com/resources/about-chase

[2] In 2013 alone, there were approximately 10.3 billion Chase credit card transactions made in the United States.  http://www.nilsonreport.com/publication_chart_and_graphs_archive.php

[3] Chase cardholders are provided with three documents upon enrollment, the Cardmember Agreement, the Chase Ultimate Rewards Rules and Regulations and the Chase Ultimate Rewards Redemption Rules.  For the sake of clarity, Plaintiffs hereinafter use the term "Agreement" to refer collectively to all three documents unless otherwise indicated.

earned without any compensation whatsoever – even when the consumer's account is in good standing.  But if Chase can terminate an account at any time for any reason, Chase never has a genuine obligation to redeem any rewards points and provide the benefits it promised to its millions of cardholders.  Chase thinks it can persist with this conduct because it claims that the fine print of the take-it-or-leave-it Agreement authorizes such conduct – fairness be damned.

Plaintiffs Harry Gao and Roberta Socall were Chase Rewards credit card holders who, like millions of other Chase Rewards cardholders, made credit card purchases believing that their expenditures would result in the accumulation of rewards points, that their purchases would entitle them to cash rebates, and that those earned rewards would never expire.  In fact, Plaintiffs Gao and Socall had in the past redeemed portions of their Chase Rewards points without difficulty.

Nevertheless, after using their cards for multiple years and making numerous purchases, Plaintiffs Gao and Socall received written notification that Chase had decided to unilaterally terminate their credit cards, despite the fact their accounts had never been in default and despite the fact that they never missed a monthly payment.  In terminating their credit card accounts, Chase stripped Plaintiffs of all the unredeemed rewards points that they had already earned – without any form of compensation whatsoever.

Plaintiffs assert that taking their reward points at Chase's sole discretion at anytime, even when cardholders' accounts were not in default, without any form of compensation, is deceptive, unlawful, and violates the express and implied terms of the credit card agreement.  On June 13, 2014, Plaintiff Harry Gao filed suit on behalf himself and similarly situated Chase card holders stating claims for Breach of Contract (Count I); Fraudulent Inducement (Count II); Breach of the Covenant of Good Faith and Fair Dealing (Count (III); Violations of Ohio and Florida consumer

protection statutes (Count IV); and Unjust Enrichment (Count V).  On August 15, 2014, Roberta

Socall was added to the case through the filing of an Amended Complaint ("Am. Compl").  On

October 27, 2014, Defendants filed the instant motion to dismiss.  For the reasons that follow,

Defendants' motion to dismiss must be denied.

## II.   FACTUAL BACKGROUND

Chase, like other credit card issuers, offers its cardholders a broad selection of credit card

rewards programs.  Chase offers a cash back rewards program that allows cardholders to redeem

points for gas, groceries, and drug store purchases, known as the Ultimate Rewards Program.

(*Id*. ¶4).   The Chase Freedom card is part of the Chase Ultimate Rewards program.   Upon

enrolling in the program, cardholders receive several documents including the Cardmember

Agreement, the Chase Rewards Rules and Regulations and the Chase Rewards Redemption

Rules.  The  Rules and Regulations state in part:

> **Earning Rewards**: You will earn 1 point or 1% rebate for each $1 of Net
> Purchases.  You will earn an additional 1 point or 1% rebate for each $1 of
> eligible Net Purchases made online through the Program booking tool.
>
> \*   \*   \*
>
> **Expiration**: Points/rebates earned in this Program will not expire.

In addition, Chase's ubiquitous nationwide marketing and promotional materials for the

Chase Rewards program often state that points will never expire.

Plaintiffs Gao and Socall were Chase Freedom cardholders and were part of the Chase

Ultimate Rewards program.   Plaintiffs, presumably like millions of other Chase Rewards

cardholders, made purchases on their Chase credit cards with the understanding that their

expenditures would result in the accumulation of rewards points or rebates and that those points

would  not  expire.   (*Id.* ¶7).   This  understanding  was  based  in  part  on  Chase's  relentless

marketing and advertising efforts which it used to induce Plaintiffs to obtain Chase Rewards

credit cards.  As of July 2013, Plaintiff Gao had in his possession approximately 10,000 points. The points earned by Plaintiff Gao entitled him to a cash rebate of approximately $100.00.  (*Id.* ¶39).  Plaintiff Gao had never missed a monthly credit card payment and his account was in good standing.  (*Id.* ¶40).  As of September 2011, Plaintiff Socall had in her possession in excess of 12,000 points.  The points earned by Plaintiff Socall entitled her to a cash rebate in excess of $120.00.  (*Id.* ¶43).  Plaintiff Socall had also never missed a monthly credit card payment and her account was also in good standing (*Id.*).

Nevertheless, Plaintiffs Gao and Socall unexpectedly received written notification that Chase had unilaterally decided to terminate their credit card accounts, despite the fact that their accounts were never in default.  In terminating their accounts, Chase simply took the Plaintiffs' unredeemed rewards points that Plaintiffs had earned without any form of compensation whatsoever.  (Am. Compl. ¶¶ 40, 44).  In fact, Chase never even afforded Plaintiffs an opportunity to redeem their points prior to closing their accounts.  As demonstrated by the numerous online consumer complaints as well as the hundreds of complaints filed with the Consumer Financial Protection Bureau ("CFPB"), Chase's actions in terminating Plaintiffs' credit card accounts and taking their rightfully-earned points were not isolated incidents, but instead were part of a continuing and systematic course of conduct that Chase engaged in for years impacting thousands of its customers.  (*Id.* ¶ 49).

## III.   <u>MOTION TO DISMISS STANDARD</u>

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  A court's inquiry is limited to "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint," *Di Folco v. MSNBC Cable*

*LLC*, 622 F.3d 104, 111 (2d Cir. 2010); it should "not weigh the strength of the evidence," *Vogt v. Greenmarine Holding, LLC*, 318 F. Supp. 2d 136, 144 (S.D.N.Y. 2004), nor resolve issues of credibility. *Castagna v. Luceno*, No. 09-CV-9332 CS, 2011 WL 1584593, at *9 (S.D.N.Y. Apr. 26, 2011). Instead, a court must look only to whether the plaintiff has "state[d] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

## IV.   LEGAL ARGUMENT

### 1.   The Amended Complaint Adequately States Claims for Breach of Express Contract and Breach of the Covenant of Good Faith and Fair Dealing.

Count I of the Amended Complaint asserts a claim for breach of express contract. Count III of the Amended Complaint asserts a related claim for breach of the covenant of good faith and fair dealing. Defendants' motion seeks dismissal of both contract-based claims. As explained below, these contract claims have been adequately pled and should not be dismissed.[4]

#### A.   The Amended Complaint Sufficiently States a Prima Facie Claim for Breach of Contract.

Defendants assert that the Amended Complaint fails to state a claim for breach of express contract, arguing that Plaintiffs have not sufficiently identified the specific contractual obligation that was breached. Yet, the pleading requirements for breach of contract under Delaware law are basic. "To survive a motion to dismiss for failure to state a breach of contract the plaintiff must show: (1) the existence of an express or implied contract; (2) a party breached the obligation imposed by the contract; and (3) any damages that the plaintiff incurred as a result of the breach. *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003); *see also*, *Shah v.*

---

[4] A choice of law provision in the Chase Cardmember Agreement dictates that the law of the State of Delaware governs disputes related to the contract. For the purposes of this motion, Plaintiffs do not contest the choice of law provision as it applies to Plaintiffs' contract-based claims.

*American Solutions, Inc.*, No. N11C-07-196 JRJ, 2012 Del. Super. LEXIS 94 at *6 (March 8, 2012).  Here, Defendants argue only that the second prong of the pleading standard has not been met. However, in clear, unambiguous language, the Amended Complaint does identify the express contractual obligation that was breached, *i.e.*, Chase's failure to compensate Plaintiffs for earned but unredeemed rewards points.  (*See* Am. Compl. ¶¶ 8, 9, 40, 44, 49, 53, 60, 61). Specifically, in paragraphs 60 and 61 of the Amended Complaint, Plaintiffs set forth in plain terms the breach of Defendants' obligations under the contract.  The Amended Complaint states in pertinent part as follows:

> 60.    The act of closing Plaintiffs' and Class members' non-defaulted accounts and revoking all of Plaintiffs' and Class members' reward points, without fair compensation, amounts to a breach of a valid contract, which caused Plaintiffs and Class members to suffer actual, ascertainable losses.
>
> 61.    Plaintiffs and the Class have performed all material obligations imposed on them in the contract. Defendants have not performed the obligations imposed on them in the contract.

(Am. Complaint ¶¶ 60, 61).

In these averments, Plaintiffs have adequately pled that the unwarranted taking of rewards points violates the terms of the contract.  It is evident in the Amended Complaint that the contractual requirement imposed on Defendants which was breached was Chase's obligation to allow cardholders to redeem their rightfully-earned rewards points.

In seeking dismissal of the breach of contract claim, Defendants assert that the agreement expressly authorizes the objectionable conduct.  Defendants point to the provision that states that if "your Account is closed for any reason, your membership in the Program will be terminated" and ignores the provision in the Agreement  that states "Points/rebates earned in this Program will not expire."  (See, Am. Compl., Exhibit A).  These competing provisions are at best ambiguous and at worst contradictory because the word "expire" is susceptible to different

interpretations.  Chase goes to great lengths in its brief to argue that the word "expire" is a term of "temporal duration" and cites a portion of the Oxford English Dictionary definition.   But Defendants only cite to one portion of one definition.  Although there are several definitions of the word "expire," the very first definition in the Oxford English Dictionary is: "(Of a document, authorization, or agreement) come to the end of the period of validity."[5]   Other definitions of expire include: obsolete: conclude; to come to an end; die.[6] As such, a reasonable interpretation of the clause, "Points/rebates earned in this Program will not expire" is that as long as the account is in good standing, rewards points or rebates will never become invalid, especially when read in conjunction with the provision of the Agreement regarding the ascertainable value of the points or rebates earned.  Here, Chase breached its obligation to allow Plaintiffs to redeem rewards points when Chase promised that the points will never become invalid.

The term "expire" has varying meanings and is subject to different interpretations. Delaware courts have said that,"[t]erms are ambiguous if they are "reasonably susceptible of different interpretations."  *Furman v. Delaware Department of Transportation*, No. N10C-10-164 CLS, 2014 Del. Super. LEXIS 347 at *7 (July 9, 2014).  When considering a motion to dismiss, the Court may not choose between those differing interpretations.  Instead, it may dismiss the complaint "only if the defendants' interpretation is the *only* reasonable construction as a matter of law."  *Id*  at *7 (emphasis added).  If ambiguity exists, it "must be construed in a light most favorable to the non-moving party."  *Id.*  Here, there can be little doubt that ambiguity exists between the contract provisions.  Because there is ambiguity, the Court should construe the language in a light most favorable to Plaintiffs and should not dismiss the claim.

---

[5] http://www.oxforddictionaries.com/definition/english/expire

[6] http://www.merriam-webster.com/dictionary/expire

**B.      The Amended Complaint Adequately States a Claim for Breach of the Covenant of Good Faith and Fair Dealing.**

Defendants next argue that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing should be dismissed, essentially arguing that the covenant cannot infer language that contradicts the express terms of the contract.  Despite Defendants' assertions to the contrary, for the reasons below, Plaintiffs have adequately stated a claim for breach of the implied covenant.

In Delaware, the implied covenant of good faith and fair dealing attaches to every contract.  *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 447 (Del. 2005).  A party breaches the implied covenant of good faith and fair dealing by engaging in "arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain," or by "frustrat[ing] the overarching purpose of the contract by taking advantage of [its] position to control implementation of the agreement's terms." *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005).   This is precisely the situation here, where Chase has promised that rewards have value and do not expire, but has used its position of power to frustrate the entire purpose of the agreement by taking an asset from Plaintiffs whenever it feels like it for no reason at all and, thus, preventing consumers like the Plaintiffs here from receiving the benefit of their bargain.  Yet, rewards points are more than a theoretical asset that only have value after they are redeemed.  In fact, courts regularly recognize the tangible value of such points before redemption.  *See, i.e. McCaffrey v McCaffrey*, 107 A.D.3d 1106, 1111 (N.Y. App. Div. 3d Dep't 2013) (dividing evenly a couples' American Express reward points in a divorce proceeding).

The implied covenant of good faith and fair dealing is a "judicial convention designed to protect the spirit of an agreement when, without violating an express term of an agreement, one

-8-

side uses oppressive or underhanded tactics..."  *Chamison v. Healthtrust, Inc.*, 735 A.2d 912, 920 (Del. Ch. 1999), aff'd, 748 A.2d 407 (Del. 2000).  Courts include the covenant of good faith and fair dealing in all contracts to "honor the parties' reasonable expectations" under the contract. *Dunlap v.* 878 A.2d at 447 (emphasis added).  Based upon the language of the Agreement, Plaintiffs, in the instant case, had a reasonable expectation that their expenditures would result in the accumulation of rewards points or rebates and that the points would not be taken from them. Thus, the implied covenant should be invoked here to protect the spirit of the agreement and to honor Plaintiffs' reasonable expectations under the contract.  *See*, *Bae Systems Information and Electronic Systems Integration, Inc.  v. Lockheed Martin Corp.*, C.A. No. 3099-VCN, 2009 Del. Ch. LEXIS 17 at *22 (Del. Ch., February 3, 2009) (Plaintiffs stated a claim for breach of the covenant of good faith and fair dealing where defendants failed to disclose opportunities allocated to plaintiff under a "Memorandum of Agreement").

Defendants argue that Plaintiffs' claim for breach of the implied covenant fails because the covenant of good faith and fair dealing cannot infer language that contradicts the express terms of the contract.  Paradoxically however, "a breach of the implied covenant of good faith and fair dealing involves cases in which there is a breach of a term that has been implied into the contract." *Id.* at 441.  Here, the provision of the Rules and Regulations stating that points will not expire and the provision in the Agreement indicating that points have an ascertainable dollar value, when read together imply that as long as the cardholder's account remains in good standing, the points will never become invalid.  Consequently, when Chase elected to take the Plaintiffs' earned reward points for no reason, it breached the implied covenant.  Therefore, despite Defendants' assertions, Plaintiffs have adequately stated a claim for the breach of the implied covenant.

## 2. The Amended Complaint Adequately States Claims for Fraudulent Inducement.

To state a claim for fraudulent inducement, the plaintiff must show "(1) a material misrepresentation or omission that induced the party to sign the contract; (2) scienter; (3) reliance; and (4) injury." *Davidowitz v. Patridge,* No. 08 CV 6962 (NRB), 2010 U.S. Dist. LEXIS 132762, at *7 (S.D.N.Y. Dec. 7, 2010)).[7]  Despite Chase's contentions, Plaintiffs have properly alleged each element.  Chase does not dispute that Plaintiffs have stated an injury. Indeed, they cannot, as Plaintiffs allege that they each had unredeemed points that Chase repossessed at the time Chase closed their accounts without explanation.  Am. Compl ¶¶ 39, 43.

### A. Plaintiffs Have Identified an Actionable Misrepresentation.

Chase first claims that Plaintiffs have not alleged the misrepresentations it made to customers with the requisite specificity of Rule 9(b).  That is not so.  The Complaint highlights material misrepresentations that Chase made to its customers in its advertising and promotional materials by offering a Rewards Program that falsely offered "Unlimited Earnings."  *See e.g., Id.* at ¶¶ 5, 63; Ex. D at 2.  The Rewards Program functions as an incentive to customers to not only select Chase's credit card, but to use it frequently to make purchases.  *See Id.* at ¶ 1.  Chase is the beneficiary of this marketing because it derives transaction fees from merchants and potential

---

[7] Plaintiffs disagree with Defendants' position that Delaware law governs their non-contractual claims.  In a diversity action, if there is a difference in the substantive law of the relevant states, the forum state's choice-of-law principles govern the choice of substantive law.  *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.,* 448 F.3d 573, 582 (2d Cir. 2006) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941)).  If no conflict exists, the law of the forum state is applied.  *Wall v. CSX Transp. Inc.,* 471 F.3d 410, 422-23 (2d Cir. 2003).  If a conflict does exist, New York courts do not necessarily defer to the choice-of-law provision in the agreement at issue.  *See In re Lois/USA, Inc.,* 264 B.R. 69, 92 (Bankr. S.D.N.Y. 2001). Indeed, it is unlikely that Delaware law would govern Plaintiffs' non contractual claims here. *See Innovative Biodefense, Inc. v. VSP Techs.,* 2013 U.S. Dist. LEXIS 95429, at **19-20 (S.D.N.Y. Jul. 3, 2013) (*citing R. B. Ventures, Ltd. v. Shane,* 112 F.3d 54, 60 (2d Cir. 1997)); *Hettinger v. Kleinman,* 732 F. Supp. 2d 421, 444 (S.D.N.Y. 2010).  Even under Delaware law, however, Plaintiffs' claim should be sustained because Plaintiffs explicitly allege that the contract is unenforceable.

interest charges from consumers.  *See Id.* at ¶ 31.  Plaintiffs have included with the Complaint the promotional and advertising materials they received.  These documents exemplify the ways in which Chase falsely promoted its Rewards Program:

- Featuring "Unlimited Earnings;"

- Claiming that there "was no limit on the amount of points earned";

- Touting that a customer would "get 1 point for every $1 you spend on every purchase"; and

- Promising that there was "no expiration on points."

Ex. D to Am. Compl. at 2.  Chase further represented in other promotional materials and advertising that there were "no caps or limits on [the customer's] earning" and again, that there was "no expiration on [the customer's] rewards."  Ex. C to Am. Compl. at 3.

Based on Chase's false marketing that any points acquired were earned, had real ascertainable value, and could not be simply taken Chase whenever it wanted for no reason at all, Plaintiffs applied for a Chase credit card and accumulated thousands of reward points with real cash value.  *See* Am. Compl. at ¶¶ 6-7.  In reality, however, Chase claims that the true nature of the Rewards Program is that Plaintiffs are subject to the mercy of Chase's whim to repossess acquired points at any time for any reason, including if Chase believed that the customer had simply acquired too many points.  This limitation was not transparent and was not something that Chase disclosed to customers.  Instead, Chase featured the false and misleading rhetoric about the rewards having value and never expiring, and then buried the limitations of the Rewards Program in misleading and ambiguous language concealed in the fine print of the Program Rules and only when read in conjunction with the underlying credit card agreement.  In light of Chase reserving itself unfettered discretion, yet advertising anything but, the Rewards Program was in actuality highly limited and the promotional materials misleading.  *See e.g.*, Am. Compl., Exs. C

-11-

and D.   Despite Defendants' contentions to the contrary, Plaintiffs' Amended Complaint sufficiently alleges the material misrepresentations and omissions that Chase made.[8]

Moreover, Chase incorrectly attempts to reframe its false statements as truths (Def. Br. at 12) by suggesting a misleading meaning of "expire,"  This is particularly true when viewed through the lens of an average consumer confronted with colorful pamphlets touting an unlimited amount of points "earned" without expiration.[9]   Further, Plaintiffs may demonstrate a material misrepresentation by showing a "material omission of fact which was false and known to be false by [the defendant]" if the defendant had a duty to disclose.  *Fitzgerald v. Chase Home Fin., LLC*, 10-cv-4148 (CS), 2011 U.S. Dist. LEXIS 156395, at *15 (S.D.N.Y. Feb. 28, 2011) (citing *Sogenti USA LLC v. Whirlwind Bldg. Sys. Inc.*, 274 F. App'x 105, 107 (2d Cir. 2008).  A duty to disclose arises: (1) where the party has made a partial or ambiguous statement, on the theory that once a party has undertaken to mention a relevant fact to the other party it cannot give only half of the truth; (2) when the parties stand in a fiduciary or confidential relationship with each other; and (3) where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.  *Brass v. Am. Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir. 1993) (internal citations omitted.)

---

[8] To the extent the Court disagrees and finds that Plaintiffs' pleadings with respect to their fraudulent inducement claim need more specificity, Plaintiffs request that they be permitted leave to replead.  *See Schlenger v. Fid. Emplr. Servs. Co., LLC*, 785 F. Supp. 2d 317, 353 (S.D.N.Y. 2011) (permitting plaintiff the opportunity to amend complaint to plead with more specificity the elements of fraudulent inducement.)

[9] Indeed, the Consumer Fraud Protection Bureau is investigating the ways in which credit card companies disclose their program rules, which director Richard Cordray described generally as "detailed and confusing."   *See* Credit Card Rewards Programs Examined by U.S. Consumer Bureau, Carter Dougherty, www.bloomberg.com, November 15, 2013, available at, http://www.bloomberg.com/news/2013-11-15/credit-card-rewards-programs-examined-by-u-s-consumer-bureau.html (last visited November 20, 2014.)

Given Chase's superior knowledge of how it would truly implement its Rewards Program and its use of ambiguous terms when promoting the Rewards Program, Chase had a duty to disclose forthrightly that it could and would exercise its unfettered discretion, indiscriminately to render the rewards points worthless.  Had Chase made the proper disclosures, customers would not have obtained the false impression that the points they acquired had been truly earned, had real value, and could be retained indefinitely.   As such, Plaintiffs have properly alleged a material misrepresentation by omission.[10]  *See e.g., Brass v. Am. Film Tech, Inc*., 987 F.2d 142, 152 (2d Cir. 1993) (holding a material misrepresentation was sufficiently alleged where the defendant omitted the fact that the contracted for securities would be restricted); *Nash v. The New School*, 05 Civ. 7174 (KMW)(FM), 2009 U.S. Dist. Lexis 36208, at *10 (S.D.N.Y. Apr. 29, 2009) (holding that plaintiffs had stated a fraudulent inducement claim by omission because the defendant had a duty to disclose omitted facts which if disclosed would have corrected plaintiffs' mistaken assumptions that induced them to enter the school's program).

### B.    Chase's Fraudulent Intent has been Adequately Pled and is Obvious from the Pleadings.

Defendants next complain that Plaintiffs' allegations fail to allege a strong inference of their fraudulent intent because these allegations are pled upon "information and belief." (Def. Br. at 13).  However such allegations of fraudulent intent "may be based on information and belief when facts are peculiarly within the opposing party's knowledge," *Three Crown Ltd. P'ship v. Caxton Corp*., 817 F. Supp. 1033, 1051 (S.D.N.Y. 1993) (quoting *Wexner v. First Manhattan*

---

[10] Defendants' reliance on *Frontier-Kemper Constructors, Inc. v. Am. Rock Salt Co*., 224 F. Supp. 2d 520, 522 (W.D.N.Y. 2002) is misplaced.  In that case, the contract involved was the result of a years-length negotiation between two sophisticated parties.  Here, Defendants rely on misleading terms found in an adhesion contract drafted by them and sent to its customers along with the credit card.  *See* Complaint at ¶¶ 36, 41.  Moreover, in *Frontier-Kemper* the court found that plaintiff's claim was that the defendant never really intended to adhere to the contract.  That is not Plaintiffs' claim here because the terms Chase relies on here grants it unfettered discretion that is not subject to any terms in the contract converting the contract into one that is illusory.

*Co.*, 902 F.2d 169, 172 (2d Cir. 1990), provided "those statements are accompanied by a statement of facts upon which the belief is founded." *Id.* (citing *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972)). This is because a "plaintiff realistically cannot be expected to plead a defendant's actual state of mind." *Id.* (quoting *Chill v. Gen. Elec. Co.,* 101 F.3d 263, 267 (2d Cir. 1996)).

Plaintiffs can establish a strong inference "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Pittsburgh Glass Works, LLC v. Henniges Auto. GmbH & Co. KG*, 13-cv-4788, 2014 U.S. Dist. LEXIS 97629, at *6 (S.D.N.Y. July 14, 2014) (internal citations omitted.) "Motive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged. Opportunity would entail the means and likely prospect of achieving concrete benefits by the means alleged." *Id*.

Here, reading the Amended Complaint in its entirety, and not in piecemeal fashion as Defendants have done, supports the conclusion that Chase had a strong financial motive to commit the fraud have clearly been pled. For example, Plaintiffs allege that Rewards Programs are the number one reason consumers apply for a selected credit card and the best way to attract customers. *See*, Am. Compl. at ¶ 28. Plaintiffs further allege that Chase earns more money and is more profitable when consumers spend more on their cards because of increased interchange revenues and the potential for more interest income. *Id.* at ¶¶ 31-33. Finally, Chase can save itself significant costs by taking consumers' reward points away before they are redeemed. Thus, Chase utilizes false and misleading advertising and promotional materials related to its Rewards Program in order to attract customers to its credit cards over a competitor and to induce

the customer into using the card more frequently, then at its discretion attempts to avoid paying out on the reward points earned.  *Id.* at ¶¶ 1, 5, 7, 63.[11]

### C.    Plaintiffs' Reliance on Defendants' Misrepresentations Was Reasonable and Justifiable.

Chase is also wrong to argue that the statements concerning forfeiture made in the programs' rules undermine the reasonableness of Plaintiffs' reliance on its uniform misrepresentations that the Rewards Program came with unlimited rewards that would not expire.  Def. Br. at 13-14.  Indeed, the reasonableness of Plaintiffs' reliance is an inappropriate inquiry on a motion to dismiss.  *See e.g., Stamelman v. Fleishman-Hillard*, Inc., 2003 U.S. Dist. LEXIS 13328, *21-22, 2003 WL 21782645 (S.D.N.Y. July 30, 2003) ("whether or not reliance on alleged misrepresentations is reasonable in the context of a particular case is intensely fact-specific and generally considered inappropriate for determination on a motion to dismiss.") (quoting *Doehla v. Wathne Ltd., Inc.,* 98 Civ. 6087, 1999 U.S. Dist. LEXIS 11787, at *10 (S.D.N.Y., Aug. 3, 1999)).  As such, the reasonableness of Plaintiffs' reliance cannot even be considered at this time. [12]

Chase customers like Plaintiffs were justified in relying on the clear and prominently displayed representations.  *See Shively v. Mitchell*, 13 Civ. 2164 (PAE), 2013 U.S. Dist. LEXIS 153024, at *25 (S.D.N.Y. Oct. 24, 2013) ("on a motion to dismiss, defendants can prevail only if

---

[11] Chase cannot hide behind the language buried in the Agreement, which was drafted in such away that if read would deceive the customer into thinking that Chase would only close an account if it was in default, not for no reason at all.  Even if Chase did intend to fully disclose the nature of the program, it did so in a reckless manner, which would be sufficient to establish scienter.  *See e.g., In re Blech Sec. Litig*., 961 F. Supp. 569, 581 (S.D.N.Y. 1997) (a strong inference of scienter can be established by showing conscious misbehavior or recklessness on the part of a defendant.)

[12] In any event, the language buried in the Agreement rules does not undermine Plaintiffs' reliance.  As previously explained, this language is at best ambiguous and at worst contradictory when read with Chase's other representations, that the rewards points would not expire.  *See supra*, Section I.A. at 7.

it was categorically unreasonable for the plaintiff to rely on this representation.")  Defendants'

reliance on *Carrow v. Arnold*, No. CIV.A. 182-K, 2006 Del. Ch. LEXIS 191, at *11(Del. Ch.

Oct. 31, 2006) and *Grudkowski v. Foremost Ins. Co.,* 556 Fed. App'x 165, 169 (3d Cir. 2014) is

misplaced. *Carrow,* involved a contract for a real estate sale that was not an adhesion contract

like the one at issue here.  Instead, in *Carrow* the contract involved negotiated terms that the

plaintiff had "approximately one week to study the proposed contract" and he had an opportunity

to review a draft of it and consult an attorney before executing the contract.  2006 Del. Ch.

LEXIS 191, at *16-18.  Likewise, the unpublished opinion *Grudkowski* is of no help to Chase.

As previously explained, the terms here are not clear or unambiguous, unlike the terms in

*Grudkowski*. 556 Fed. App'x at 169.

### D.  Fraudulent Inducement is an Appropriate Cause of Action in this Context.

Defendants' last contention – that Plaintiffs are attempting to "bootstrap" a fraudulent

inducement claim to their contract claim – is also meritless.  Def. Br. at 14-15.  "Whether

fraudulent inducement claims are duplicative of breach of contract claims hinges on whether the

alleged misrepresentations were made prior to the formation of the contract, and whether the

misrepresentations were explicitly included in the contract between the parties."  *Woods v.

Maytag Co*., 10-CV-0559, 2010 U.S. Dist. LEXIS 116595, at *33-34, 2010 WL 4314313

(E.D.N.Y. 2010).  Here, Plaintiffs' fraudulent inducement claim is not based just on the

statements made in the Program Rules[13]; instead, it is supported by the numerous false

---

[13] The cases that Chase relies on here (Br. at 14) are inapposite.  For example, *Pinkert v. John J. Oliveiri P.A*.,Civ. A 99-380, 2001 WL 641737, at *16-18 (D.Del. May 24, 2001), was a summary judgment opinion that involved allegations solely based on the defendant's nonperformance under the contract and on misrepresentations occurring after the contract was entered into by the parties.  Similarly, in *Iotex Commc'ns, Inc. v. Defries*, No. 15817, 1998 Del. Ch. LEXIS 236, at *15 (Del. Ch. Dec. 21, 1998), the plaintiff's allegations amounted to nothing

statements Chase made in its advertising and promotional materials it used to induce Plaintiffs to apply for a credit card in the first place.  *See supra* at p. 10-11.  It is of no moment that the contract includes the same expiration language used in some of the promotional advertising materials since this is not the sole misrepresentation that Plaintiffs rely on.  Instead, this was just one misrepresentation of many that Chase used to falsely promote the Rewards Program.  Thus, Plaintiffs' allegations of fraudulent inducement claim cannot be construed to allege only that Chase "never intended to perform its obligations," in breach of contract.  *Narrowstep, Inc. v. Onstream Media Corp.*, 2010 Del. Ch. LEXIS 250, at *50 (Del. Ch. Dec. 22, 2010).  Instead, Plaintiffs' allegations demonstrate that Chase misrepresented what the Rewards Program actually was in order to induce Plaintiffs into applying for a credit card with Chase (and using it frequently) and not a competitor.  These allegations are sufficient.  *Narrowstep*, 2010 Del. Ch. LEXIS 250, at *50 (holding that because the complaint did not merely allege that the parties had a contract which the defendant intended not to honor and nothing more, the agreement was not the source of plaintiff's fraud claim "but rather the instrument by, which [the defendant] perpetrated its broader scheme to loot [the plaintiff.]")[14]  For all these reasons, Plaintiffs have stated a viable claim for fraudulent inducement.

### 3.    The Unjust Enrichment Claim Should be Construed as an Alternative Claim in the Event the Contract is Deemed Invalid or Otherwise Unenforceable.

Defendants' sole argument underlying its motion to dismiss Plaintiffs' unjust enrichment claim is that such a claim is not permitted because Plaintiff alleges the existence and

---

more than the assertion that the defendant never intended to perform its obligations under the contract.

[14]  Additionally, to the extent the Court finds the contract invalid due to its illusory nature, Defendants' bootstrapping argument fails because the "contract could not have been breached."  *Petra Mezzanine Fund, L.P. v. Willis*, 2012 U.S. Dist. LEXIS 156529, 7 (D. Del. Nov. 1, 2012) (denying the dismissal of a fraudulent inducement claim based on "bootstrapping" where the contract was found to be invalid.)

enforceability of a contract, and that under such circumstances, Plaintiffs cannot plead unjust enrichment in the alternative. Defendants are wrong.

Where a plaintiff alleges that the contract is invalid or unenforceable, pleading in the alternative is permissible. *AstroPower Liquidating Trust v. KPMG LLP*, 2007 U.S. Dist. LEXIS 38222, at *18 (D. Del. May 25, 2007). Even the case law Defendants cite acknowledges that pleading in the alternative is permissible "'when there is doubt surrounding the **enforceability** or the existence of the contract.'" (Def. Mem. at 19) (quoting *Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 2130607, at *8 (Del. Ch. Aug. 26, 2005) (emphasis added).[15] Here, Plaintiffs specifically allege that Defendants' conduct "in revoking the rightfully earned reward points of cardholders at Chase's sole discretion at any time without any form of compensation to cardholders amounts to an illusory promise rending the rewards contract **unenforceable**." Am. Compl. ¶86 (emphasis added). Accordingly, Plaintiffs can plead in the alternative and Defendants' motion to dismiss the unjust enrichment claim should be denied. *See Swift v. BancorpSouth, Inc. (In re Checking Account Overdraft Litig.)*, 2013 U.S. Dist. LEXIS 154432, at **54-55 (S.D. Fla. Oct. 24, 2013) (where defendant bank moved for summary judgment on unjust enrichment claims because plaintiffs also brought breach of contract claims, court denied motion because factual disputes remained regarding whether material terms of contract were unconscionable and therefore unenforceable and whether defendant had exercised discretion in bad faith); *Roling v. E*Trade Sec., LLC*, 756 F. Supp. 2d 1179, 1189-91 (N.D. Cal. 2010)

---

[15] Defendants also cite *Ameristar Casinos, Inc. v. Resorts Int'l Holdings, LLC*, 2010 Del. Ch. LEXIS 107 (Del. Ch. May 11, 2010), but there, as in *Alex. Brown Mgmt.*, the court precluded pleading in the alternative "'when the complaint alleges an express, **enforceable** contract. . .'" *Id.* at *39 (quoting *MCG Capital Corp. v. Maginn*, 2010 Del. Ch. LEXIS 87, 2010 WL 1782271, at *24 (Del. Ch. May 5, 2010) (emphasis added). Moreover, both cases are distinguishable on their facts. In *Ameristar Casinos*, the court had already determined that the plaintiff had stated a valid claim for breach of contract, *see id.* at **30-31, and neither party disputed the existence or enforceability of a contract in *Alex. Brown Mgmt.*. *See* 2005 Del. Ch. LEXIS 133, at **28-29.

(holding, under NY and CA law, that unjust enrichment claim stands where plaintiffs alleged that defendant's unilateral ability to change term of contract was unconscionable, and therefore contract was unenforceable); *REDUS Peninsula Millsboro, LLC v. Mayer*, 2014 Del. Ch. LEXIS 161, at *15 (Del. Ch. Aug. 29, 2014) (where agreement governing homeowners' payments to resident association for telecommunications services was allegedly unconscionable    and therefore unenforceable, unjust enrichment claim survived motion to dismiss); *Moche v. Srour*, 2013 N.Y. Misc. LEXIS 5040, at *6 (Sup. Ct. N.Y. Cty. Oct. 26, 2013) (where party alleged that contract was unconscionable, therefore bona fide dispute regarding existence of contract, unjust enrichment claim not precluded).[16]   Affording Plaintiffs the right to plead in the alternative is particularly appropriate at the motion to dismiss stage.   *See Universal Am. Corp. v. Partners Healthcare Solutions Holdings, L.P.*, 2014 U.S. Dist. LEXIS 100654, at *20 (D. Del. July 24, 2014) ("Although unjust enrichment . . . cannot be maintained simultaneously with a breach of contract claim, there is no reason not to allow [plaintiff] to plead in the alternative at this stage of the proceeding"); *Chestnut v. Whitehaven Income Fund I, LLC*, 2014 U.S. Dist. LEXIS 1198, at *4 (S.D.N.Y. Jan. 6, 2014) (Crotty, J.) (denying motion to dismiss various claims, including unjust enrichment, where plaintiff adequately alleged that interest charged under agreement was usurious and therefore unconscionable and not enforceable); *see also Dart Brokerage Corp. v.*

---

[16] *See also Guiliano v. U.S. Nursing Corp.*, 339 B.R. 570, 577 (Bankr. D. Del. 2006) (denying motion to dismiss unjust enrichment claim where plaintiff disputed existence of contract); *Narrowstep, Inc. v. Onstream Media Corp.*, 2010 Del. Ch. LEXIS 250, at **57-60 (Del. Ch. Dec. 22, 2010) (denying motion to dismiss where doubt as to whether agreement governs particular aspect of parties' relationship at issue); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 975 F. Supp. at 621-22 (D.N.J. 1996) (denying motion to dismiss unjust enrichment claim where plaintiff alleged they had been fraudulently induced to enter into contracts that were therefore unenforceable).

*Am. Commerce Ins. Co.*, 2013 U.S. Dist. LEXIS 160219, at *6 (S.D.N.Y. Nov. 7, 2013); *MIG*

*Invs. LLC v. Aetrex Worldwide, Inc.*, 852 F. Supp. 2d 493, 513 (D. Del. 2012).[17]

> **4.   JPMorgan Chase & Co. Is Not Immune From Liability Under The Ohio Consumer Sales Practices Act Or The Florida Deceptive And Unfair Trade Practices Act.**

In the Amended Complaint, the Plaintiffs alleged that both Chase Bank USA, N.A.,

("Chase Bank") and its parent company, JPMorgan Chase & Co. ("JPMorgan") engaged in

conduct which violates the Ohio Consumer Sales Practices Act ("OCSPA") and the Florida

Deceptive and Unfair Trade Practices Act ("FDUTPA").  *See* Am. Compl. at ¶¶ 74-84.  The

Defendants argue that Chase Bank, a national bank, is exempt from liability under OCSPA and

FDUTPA, and that JPMorgan, a holding company, is also shielded from liability pursuant to

those statutes.[18]   However, Defendants have not, and indeed cannot, provide any legal support

for their position regarding the holding company, because it is not exempt from liability under

OCSPA or FDUTPA.

Defendants do not argue that holding companies are exempt from liability under OCSPA

or FDUTPA, nor have they cited a single piece of authority that even suggests that a holding

---

[17] To the extent the Court views Plaintiffs' unjust enrichment claim as insufficiently independent of the contract-based claims, Plaintiffs seek leave to amend the complaint to correct any such deficiency.  Leave to amend is freely granted under such circumstances.  *See, e.g., Capitaliza-T Sociedad De Responsabilidad Limitada De Capital Variable v. Wachovia Bank of Del. N.A.*, 2011 U.S. Dist. LEXIS 146599, at *37 (D. Del. Dec. 21, 2011), *reversed in part on other grounds*, 2012 U.S. Dist. LEXIS 108258, at *6 (Aug. 2, 2012) (permitting plaintiff to amend complaint where alleged that if contract did not govern relationship, plaintiff had no adequate remedy at law, and therefore sufficiently alleged unjust enrichment as alternative theory of liability); *Meyers v. Heffernan*, 740 F. Supp. 2d 637, 657-58 (D. Del. 2010) (permitting plaintiffs to amend complaint to   make unjust enrichment claims independent of contract-based claim); *Mortgage Lenders Networks USA, Inc. v. Wells Fargo Nat'l Assoc.*, 395 B.R. 871, 880 (Bankr. D. Del. 2008) (permitting amendment of complaint where unjust enrichment would provide remedy if court were to find that contract did not govern claims at issue).

[18] Plaintiffs recognize that Chase Bank, as a national bank, may not be held liable under either state statute and agree to dismissal of this claim against Chase Bank only.

company is shielded from liability under either statute.  This is because they cannot.  Indeed, there is nothing in either the OCSPA or FDUTPA statutes or case law in either Florida or Ohio which could justify such a position.

Thus, Defendants resort to incorrectly arguing instead that Plaintiffs have failed to allege facts sufficient to state a claim under OCSPA or FDUTPA against JPMorgan.  To establish a prima facie claim under the OCSPA, a plaintiff must "show a material misrepresentation, deceptive act or omission" that impacted his decision to purchase the item at issue.  *Temple v. Fleetwood Enters., Inc.*, 133 Fed. Appx. 254, 265 (6th Cir. 2006); *Janos v. Murduck*, 672 N.E.2d 1021 (Ohio Ct. App. 1996).   Similarly, FDUTPA requires: (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages.  *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006).

Plaintiffs Amended Complaint alleges that JPMorgan was part of an unfair, deceptive and unlawful scheme which consisted specifically of revoking the duly earned Rewards points of credit card consumers who were not in default, without providing adequate compensation.  *See* Am. Compl, at ¶77.  Moreover, the Amended Complaint alleges that the Defendants deceived the Plaintiffs into believing that by making purchases on their credit cards they would accumulate rewards points that would not expire.  However, after the Plaintiffs initiated purchases on their credit cards based on this deception, the points earned were unexpectedly and inexplicably revoked.  *Id.* at ¶¶37-44.  The Amended Complaint goes on to allege that the Plaintiffs' actual damages consist of the value of the Rewards points which they earned, but which were subsequently and unfairly revoked.  *Id.* at ¶78.  These allegations state a claim under FDUTPA and OCSPA against JPMorgan because it has been specifically accused of being part of the

unlawful scheme. Accordingly, Plaintiffs are entitled to an opportunity to conduct discovery regarding the scope and extent of JPMorgan's role in this unlawful and deceptive scheme.

## V.     CONCLUSION

For all of the reasons stated above, Plaintiffs respectfully request that Defendants' motion to dismiss be denied.

**DATED:     December 1, 2014**                           Respectfully submitted,

                                    /s/ *Kenneth J. Grunfeld*
                                    Richard M. Golomb, Esquire
                                    Kenneth J. Grunfeld, Esquire
                                    Steven D. Resnick, Esquire
                                    **Golomb & Honik, P.C.**
                                    1515 Market Street, Suite 1100
                                    Philadelphia, PA 19102
                                    Phone: (215) 985-9177
                                    Fax:     (215) 985-4169
                                    Email:  rgolomb@golombhonik.com
                                                kgrunfeld@golombhonik.com
                                                sresnick@golombhonik.com


                                    Ted Trief, Esquire
                                    Barbara Olk, Esquire
                                    Caitlin Duffy, Esquire
                                    Shelly L. Friedland, Esquire
                                    **Trief & Olk**
                                    150 E. 58th Street, 34th Floor
                                    New York, NY 10155
                                    Phone: (212) 486-6060
                                    Fax:     (212) 317-2946
                                    ttrief@triefandolk.com
                                    bolk@triefandolk.com
                                    cduffy@triefandolk.com
                                    sfriedland@triefandolk.com

                    *Attorneys for Plaintiffs and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I Kenneth J. Grunfeld, Esquire, hereby certify that on this 1st day of December 2014, I caused a true and correct copy of Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiffs' Amended Complaint to be filed and served on all counsel of record via the Court's CM/ECF filing system.

**DATED:**   <u>December 1, 2014</u>

/s/ *Kenneth J. Grunfeld*
Kenneth J. Grunfeld, Esquire