**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HARRY GAO and ROBERTA SOCALL, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br> -against-<br><br>JPMORGAN CHASE & CO. and CHASE BANK USA, N.A.,<br><br>          Defendants. | No. 14 Civ. 4281 (PAC)<br>**ORAL ARGUMENT REQUESTED** |

**REPLY IN SUPPORT OF**
**MOTION TO DISMISS THE AMENDED COMPLAINT**
<u>**PURSUANT TO FED. R. CIV. P. 12(b)(6)**</u>

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

I. Plaintiffs Fail To State Any Contract-Based Claim ............................................................. 1

    A. Plaintiffs Fail To Plead A Breach Of An Express Contract Term ........................... 1

    B. Plaintiffs Fail To Plead A Breach Of The Implied Covenant ................................. 3

II. Plaintiffs Fail To State A Claim For Fraudulent Inducement .............................................. 4

    A. Plaintiffs Fail To Allege An Actionable Misstatement ............................................ 4

    B. Plaintiffs Fail To Allege Intent ................................................................................. 6

    C. Plaintiffs Fail To Allege Reliance ............................................................................ 6

    D. Plaintiffs' Fraud Claim Is Insufficiently Distinct From Their Contract Claim ....... 7

III. Plaintiffs Fail To State A Claim For Unjust Enrichment ..................................................... 8

IV. Plaintiffs' OCSPA And FDUTPA Claims Fail .................................................................. 10

CONCLUSION ................................................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Albert v. Alex. Brown Mgmt. Servs., Inc.*,
    2005 WL 2130607 (Del. Ch. Aug. 26, 2005) ....................................................................8

*Ameristar Casinos, Inc. v. Resorts Int'l Holdings, LLC*,
    2010 WL 1875631 (Del. Ch. May 11, 2010)................................................................9, 10

*ATSI Commc'ns v. Shaar Fund*,
    493 F.3d 87 (2d Cir. 2007).................................................................................................5

*Black Horse Capital, LP v. Xstelos Holdings, Inc.*,
    2014 WL 5025926 (Del. Ch. Sept. 30, 2014) ....................................................................7

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
    98 F.3d 13 (2d Cir. 1996) ..............................................................................................7, 8

*Campoverde v. Sony Pictures Entm't*,
    2002 WL 31163804 (S.D.N.Y. Sept. 30, 2002).................................................................8

*Carey's Home Constr., LLC v. Estate of Myers*,
    2014 WL 1724835 (Del. Super. Apr. 16, 2014) ................................................................9

*Carrow v. Arnold*,
    2006 WL 3289582 (Del. Ch. Oct. 31, 2006) .....................................................................6

*Chamison v. HealthTrust-Hosp. Co.*,
    735 A.2d 912 (Del. Ch. 1999), *aff'd*, 748 A.2d 407 (Del. 2000)........................................4

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
    516 N.E.2d 190 (N.Y. 1987).............................................................................................9

*Council of Dorset Condo. Apartments v. Gordon*,
    801 A.2d 1 (Del. 2002) .....................................................................................................2

*Dexia SA/NV v. Deutsche Bank AG*,
    2013 WL 98063 (S.D.N.Y. Jan. 4, 2013) ..........................................................................4

*Dunlap v. State Farm Fire & Casualty Co.*,
    878 A.2d 434 (Del. 2005) ............................................................................................3, 4

*Elliott Assocs., L.P. v. Avatex Corp.*,
    715 A.2d 843 (Del. 1998) .................................................................................................2

*Fadem v. Ford Motor Co.*,
    352 F. Supp. 2d 501 (S.D.N.Y. 2005), *aff'd*, 157 F. App'x 398 (2d Cir.
    2005) ..................................................................................................................6

*Fidenas AG v. Honeywell Inc.*,
    501 F. Supp. 1029 (S.D.N.Y. 1980)..................................................................5

*First Lincoln Holdings, Inc. v. Equitable Life Assurance Soc'y of U.S.*,
    43 F. App'x 462 (2d Cir. 2002) ........................................................................7

*Furman v. Del. Dep't of Transp.*,
    2014 WL 3406509 (Del. Super. July 9, 2014)..................................................3

*Granite Partners, L.P. v. Bear, Stearns & Co.*,
    58 F. Supp. 2d 228 (S.D.N.Y. 1999).................................................................7

*Grudkowski v. Foremost Insurance Co.*,
    556 F. App'x 165 (3d Cir. 2014) ......................................................................6

*H-M Wexford LLC v. Encorp, Inc.*,
    832 A.2d 129 (Del. Ch. 2003)...........................................................................7

*Katz v. Oak Indus. Inc.*,
    508 A.2d 873 (Del. Ch. 1986)...........................................................................3

*Ketcham v. Hall Syndicate, Inc.*,
    236 N.Y.S.2d 206 (Sup. Ct. 1962), *aff'd*, 242 N.Y.S.182 (App. Div. 1963)........9

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)..............................................................................6

*Mandarin Trading Ltd. v. Wildenstein*,
    944 N.E.2d 1104 (N.Y. 2011)...........................................................................4

*Matthew v. Laudamiel*,
    2012 WL 605589 (Del. Ch. Feb. 21, 2012) ......................................................3

*MicroStrategy Inc. v. Acacia Research Corp.*,
    2010 WL 5550455 (Del. Ch. Dec. 30, 2010) ....................................................4

*Nemec v. Shrader*,
    991 A.2d 1120 (Del. 2010) ...........................................................................3, 4

*Osan Ltd. v. Accenture LLP*,
    454 F. Supp. 2d 46 (E.D.N.Y. 2006) ................................................................8

*Philip A. Templeton, M.D., P.A. v. EmCare, Inc.*,
    868 F. Supp. 2d 333 (D. Del. 2012)..................................................................8

*Schock v. Nash*,
    732 A.2d 217 (Del. 1999) .................................................................................................4

*Wills v. Morris, James, Hitchens & Williams*,
    1998 WL 842325 (Del. Ch. Nov. 6, 1998) ....................................................................2, 3

*Woods v. Maytag Co.*,
    2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010) ....................................................................7

## STATUTES, RULES, AND REGULATIONS

Fed. R. Civ. P. 8 ..............................................................................................................................10

Fed. R. Civ. P. 9(b) ..........................................................................................................................5

## OTHER AUTHORITIES

Restatement (Second) of Contracts § 33 cmt. d (1979) ....................................................................9

Defendants respectfully submit this reply in further support of their motion to dismiss the amended complaint for failure to state a claim.

## I. Plaintiffs Fail To State Any Contract-Based Claim

### A. Plaintiffs Fail To Plead A Breach Of An Express Contract Term

Plaintiffs' breach of contract claim fails because the parties' agreement includes a provision directly controlling the issue raised by Plaintiffs' complaint—the forfeiture of their rewards points upon account closure—and that provision expressly states that if Plaintiffs' accounts were closed "for any reason," their membership in the rewards program would be terminated and Chase could "cause [them] to forfeit any points/rebates in [their] Account." Am. Compl. Ex. A. These provisions apply equally regardless of whether the "Account is in default … *and/or* [the] Account is closed for any reason." *Id.* (emphasis added). Chase adhered to these provisions in causing Plaintiffs to forfeit their rewards points upon account closure. There can be no claim for breach of contract based on conduct that the contract expressly authorizes Chase to undertake. *See* Defs. Br. 6.

Plaintiffs neither contest the plain meaning of the forfeiture-upon-account-closure provision nor contend that Chase violated it. Indeed, they ignore it altogether. Instead, Plaintiffs point to completely different contract language, which states that "Points/rebates earned in this Program will not expire" and that members "earn one (1) point or 1% rebate for each $1 of Net Purchases." Pls. Opp. 1, 6 (citing Am. Compl. Ex. A). Then, citing Delaware case law holding that contract terms are "ambiguous if they are reasonably susceptible of different interpretations," *id.* at 7, Plaintiffs assert that "a reasonable interpretation" of *that contract language* (not the forfeiture-upon-account-closure provision) is that "as long as the account is in good standing, rewards points or rebates will never become invalid," *id.*

1

That argument fails on multiple grounds.  Plaintiffs fail entirely to undermine or provide a reasonable alternative to Chase's plain textual reading of the "expire" clause.  The principal definitions of "expire" that Plaintiffs cite (at 7)—"come to the end of the period of validity" and "come to an end"—connote temporal duration and thus support Chase's reading of the clause to say that rewards points will not become void by the passage of time.  The other definitions Plaintiffs cite ("obsolete; conclude," "die") do not point in a different direction.[1]

But more to the point, Plaintiffs' reading of the "expire" clause must be rejected because it wholly fails to explain the meaning of the separate forfeiture-upon-account-closure provision and, in doing so, violates the cardinal rule of Delaware law that a contract must be interpreted "in a way that gives effect to every term of the instrument and that, if possible, reconciles all of the provisions of the instrument when read as a whole."  *Council of Dorset Condo. Apartments v. Gordon*, 801 A.2d 1, 7 (Del. 2002); *see also, e.g.*, *Elliott Assocs., L.P. v. Avatex Corp.*, 715 A.2d 843, 854 (Del. 1998) (a court should give effect to all contract terms and reconcile or harmonize all provisions).  Plaintiffs do not offer *any way* that the undisputedly clear point-forfeiture provision could possibly be reconciled with their interpretation of the "expire" language.  Thus, their reading is fundamentally incompatible with the provision that directly governs the conduct at issue in this case—the forfeiture of Plaintiffs' rewards points upon account closure.  "If parties introduce conflicting interpretations of a term, but one interpretation better comports with the remaining contents of the document or gives effect to all the words in dispute, the court may, as a matter of law and without resorting to extrinsic evidence, resolve the meaning of the disputed term in favor of the superior interpretation."  *Wills v. Morris, James, Hitchens & Williams*, 1998

---

[1] Plaintiffs' reliance (at 6) on contract language explaining how points are earned is unrelated to the issue in this case—whether and how points may be forfeited.

2

WL 842325, at *2 (Del. Ch. Nov. 6, 1998).[2]  Such is the case here:  The only reading of the contract that harmonizes all the provisions is Chase's, not Plaintiffs'.

### B. Plaintiffs Fail To Plead A Breach Of The Implied Covenant

Delaware law is clear that a plaintiff may not base an implied covenant claim on conduct expressly authorized by the contract.  *See, e.g.*, *Nemec v. Shrader*, 991 A.2d 1120, 1125-26 (Del. 2010); *see also* Defs. Br. 9-10 (collecting cases).  Rather, a plaintiff may invoke the covenant's protections "[o]nly when it is clear from the writing that the contracting parties would have agreed to proscribe an act later complained of … had they thought to negotiate with respect to that matter," *Dunlap v. State Farm Fire & Casualty Co.*, 878 A.2d 434, 442 (Del. 2005) (internal quotation marks omitted), because, ultimately, "it is an implied *contractual* obligation that is … the basis for the relief sought," *Katz v. Oak Indus. Inc.*, 508 A.2d 873, 880 (Del. Ch. 1986).

Plaintiffs ask the Court to imply a term into the contract providing that, absent default, Chase cannot cause a cardholder to forfeit rewards points upon account closure.  Pls. Opp. 9.  But just as Plaintiffs may not interpret the "expire" clause in a way that ignores the express point-forfeiture provision, so too Plaintiffs may not imply a contract term that ignores—indeed contradicts—that provision.  Here, "the contract … speak[s] directly regarding the issue in dispute," *Matthew v. Laudamiel*, 2012 WL 605589, at *17 (Del. Ch. Feb. 21, 2012), and "[e]xisting contract terms control, … such that implied good faith cannot be used to circumvent the parties' bargain, or to create a free-floating duty ... unattached to the underlying legal

---

[2]  The one case Plaintiffs cite (Opp. 7) supports Chase's position, not theirs.  In *Furman v. Delaware Department of Transportation*, 2014 WL 3406509 (Del. Super. July 9, 2014), the court recited the general proposition (on which Plaintiffs rely) that contract terms "are ambiguous only if they are reasonably susceptible of different interpretations," but it held—based on the contract "as a whole"—that the "terms are unambiguous because they are susceptible to only one reasonable interpretation," and dismissed the complaint.  *Id.* at *3.  Likewise here, the contract, read as a whole, is susceptible to only one reading.  "[T]he Court will not find ambiguity simply because the parties do not agree on the proper construction."  *Id.* (internal quotation marks omitted).

3

document," *Dunlap*, 878 A.2d at 441 (internal quotation marks omitted).  There is no basis to find that "had [the parties] thought to negotiate with respect to th[e] matter," *id.* at 442, Chase would have agreed to a term saying that rewards points could never be forfeited upon account closure if the closure was for a reason other than default.  The contract explicitly says the opposite.  *See supra*, p.1 (quoting contract); Am. Compl. Exs. A, D.[3]

## II.   Plaintiffs Fail To State A Claim For Fraudulent Inducement[4]

Plaintiffs' amended complaint premises its fraudulent inducement claim on (1) the statement in the Program Rules (*i.e.*, the contract itself) that rewards points would not expire, Am. Compl. ¶ 64; and (2) statements in "advertising and promotional" materials about the rewards program, Am. Compl. ¶ 63; *see also* Pls. Opp. 16-17.  Neither states a claim.

### A.   Plaintiffs Fail To Allege An Actionable Misstatement

As to the Program Rules, Plaintiffs appear to acknowledge that statements in the contract itself cannot give rise to a fraudulent inducement claim (*see* Defs. Br. 14-15; *infra* Part II.D), and their opposition thus argues only that Chase made alleged misstatements in "advertising and

---

[3]   There is no merit to Plaintiffs' assertion that Chase's conduct "frustrate[d] the entire purpose of the agreement."  Pls. Opp. 8.  Before Plaintiffs' accounts were closed, they "redeemed portions of their Chase Rewards points without difficulty."  Pls. Opp. 2; *see also* Am. Compl. ¶ 7.  After Plaintiffs' accounts were closed, they forfeited their points as expressly allowed by their agreements.  Thus, both before and after Plaintiffs' accounts were closed, Chase acted in accord with the express terms of the contract and Plaintiffs "got the benefit of their actual bargain."  *Nemec*, 991 A.2d at 1128.  Plaintiffs cannot claim to have been denied the fruits of their bargain and therefore invoke the implied covenant where that bargain explicitly authorized the complained-of conduct.  *See Chamison v. HealthTrust-Hosp. Co.*, 735 A.2d 912, 920-21 (Del. Ch. 1999) (the implied covenant is "extrapolate[d] … from [an agreement's] express terms"), *aff'd*, 748 A.2d 407 (Del. 2000).

[4]   Plaintiffs dispute that Delaware law governs the non-contract claims.  They do not specify what law they believe applies but cite to New York cases in the fraud and unjust enrichment sections of their opposition brief.  It makes no difference for purposes of this motion because the elements are the same under both New York and Delaware law.  *See, e.g., Dexia SA/NV v. Deutsche Bank AG*, 2013 WL 98063, at *3 (S.D.N.Y. Jan. 4, 2013) (fraud); *MicroStrategy Inc. v. Acacia Research Corp.*, 2010 WL 5550455, at *12 (Del. Ch. Dec. 30, 2010) (fraud); *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011) (unjust enrichment); *Schock v. Nash*, 732 A.2d 217, 232 (Del. 1999) (unjust enrichment).

promotional materials," not the Program Rules.  *See* Pls. Opp. 10-13.  In any event, the Program Rules were not misleading.  *See supra* Part I.A.; Defs. Br. 7-8, 12.

As to the "advertising and promotional" materials, Plaintiffs argue that those misrepresented (i) that there was no limit on earning points, (ii) that a customer would get 1 point for every $1 he or she spent on every purchase, and (iii) that points would not expire.  Pls. Opp. 11.  As a threshold matter, Plaintiffs fail to satisfy Rule 9(b), which requires specific pleading of the alleged misstatements and "the time and place of each such statement and the person responsible for making … the same," "the content of such statements and the manner in which they misled the plaintiff," and "what the defendants obtained as a consequence of the fraud."  *Fidenas AG v. Honeywell Inc.*, 501 F. Supp. 1029, 1039 (S.D.N.Y. 1980) (internal quotation marks omitted).  Plaintiffs do not plead any of this, much less with the requisite particularity.  Indeed, some of these alleged misstatements do not even appear in the amended complaint.

These statements were not misleading in any event.  As to the first (no limit on earning points), Plaintiffs make no plausible allegation that the statement was untrue.  Their assertion that Chase would "repossess acquired points … if Chase believed that the customer had simply acquired too many points" (Pls. Opp. 11) is pure speculation.  *See ATSI Commc'ns v. Shaar Fund*, 493 F.3d 87, 98 (2d Cir. 2007).  It also makes no sense:  If a Chase cardholder was acquiring a large number of points, that would mean she is spending a lot on her credit card— hardly the type of cardholder whose account Chase has incentive to close.  As to the second (1 point for every $1 spent), Plaintiffs allege nothing contrary, and in fact affirmatively plead that Chase "allowed cardholders to earn one (1) point or a 1% rebate for each dollar" spent.  Am. Compl. ¶ 35.  And the statement that points would not expire is not misleading.  *Supra* Part I.A.[5]

---

[5]   Evidently realizing the weaknesses of their fraudulent inducement claim, Plaintiffs assert fraud by omission for the first time in their opposition, claiming Chase failed to disclose that Plaintiffs would not

### B. Plaintiffs Fail To Allege Intent

Plaintiffs also fail to plead "facts that give rise to a strong inference of fraudulent intent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). Plaintiffs rely entirely on their theory that Chase had a financial motive to use the rewards program to attract customers and then close accounts and take away cardholder's rewards points before redemption. This is nonsensical. If, as Plaintiffs assert, rewards programs "are the number one reason consumers apply for a selected credit card and the best way to attract customers," and if, as Plaintiffs assert, Chase "earns more money and is more profitable when consumers spend more on their cards," Pls. Opp. 14, then Chase's financial incentive would be to keep accounts *open*, not to close them for a "savings" of forfeited points constituting a 1% rebate. Plaintiffs' only intent allegation thus supports the opposite inference from the one they ask the Court to draw.

### C. Plaintiffs Fail To Allege Reliance

Even if Plaintiffs could plead a fraud claim based on language in the Program Rules, which they cannot (*see supra* Part II.A & *infra* Part II.D), they still could not plead that they reasonably relied on the "expire" clause because the same contract also clearly stated that points could be forfeited upon account closure. Defs. Br. 11-14.[6] As to the "advertising and

---

in certain circumstances be able to "retain[]" their points "indefinitely." Pls. Opp. 12-13. However, the newly asserted allegations should be disregarded because "parties cannot amend their pleadings through issues raised solely in their briefs." *Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005), *aff'd*, 157 F. App'x 398 (2d Cir. 2005). The new allegations are also meritless. The Ultimate Rewards Program Rules and Regulations and/or the Ultimate Rewards Program Redemption Rules, both of which clearly disclosed that cardholders could forfeit points (or miles), were included in the challenged promotional materials. Am. Compl. Ex. C at 6; *see also id.* Ex. D at 5. The duty-to-disclose cases Plaintiffs cite are inapposite because Chase disclosed the supposedly omitted information.

[6] Plaintiffs' attempt (at 16) to distinguish *Carrow v. Arnold*, 2006 WL 3289582, at *11 (Del. Ch. Oct. 31, 2006) is unavailing. Plaintiffs cite no authority for distinguishing "adhesion" contracts in this context. What is more, had they received the promotional materials they challenge before applying for their Chase credit cards (and they did not, *see infra* p.7), nothing would have prevented them from taking as much time as they wanted to study them or from consulting an attorney. Likewise they cannot distinguish *Grudkowski v. Foremost Insurance Co.*, 556 F. App'x 165, 169 (3d Cir. 2014), because there, like here, the contract terms were clear.

6

promotional materials," the amended complaint alleges that these induced Plaintiffs to apply for and open their accounts, causing harm. Am. Compl. ¶¶ 63, 66. This cannot be so because the amended complaint also affirmatively alleges that the materials were sent to Ms. Socall only "after applying for the credit cards," Am. Compl. ¶ 41 (citing "Exhibits C-E"),[7] and it fails to allege Mr. Gao ever received any of these materials. As a matter of law, there was no reliance.[8]

### D. Plaintiffs' Fraud Claim Is Insufficiently Distinct From Their Contract Claim

Finally, Plaintiffs fail to "demonstrate a fraudulent misrepresentation collateral or extraneous to the contract." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996). As Plaintiffs acknowledge (at 16), "[w]hether fraudulent inducement claims are duplicative of breach of contract claims hinges on whether the alleged misrepresentations were made prior to the formation of the contract, and whether the[y] … were explicitly included in the contract between the parties." *Woods v. Maytag Co.*, 2010 WL 4314313, at *12 (E.D.N.Y. Nov. 2, 2010). Plaintiffs also appear to concede, as they must, that contract terms are not actionable in fraud, arguing only that their "fraudulent inducement claim is not based just on the statements made in the Program Rules; instead, it is supported by the numerous false statements Chase made in its advertising and promotional materials it used to induce Plaintiffs to apply for a credit card in the first place." Pls. Opp. 16-17.

The "advertising and promotional materials," however, do not support a fraud claim. *First*, as described above, Plaintiffs allege that Ms. Socall received these materials only *after*

---

[7] In fact, Exhibit E includes a point balance statement for Ms. Socall and thus is clearly a document sent to her after she was enrolled in the Ultimate Rewards program. Am. Compl. Ex. E at 2.

[8] Plaintiffs contend that the reasonableness of reliance is a factual issue (Pls. Opp. 15), but New York and Delaware courts routinely dismiss fraud claims where reliance is inadequately pled, as here. *See, e.g.*, *First Lincoln Holdings, Inc. v. Equitable Life Assurance Soc'y of U.S.*, 43 F. App'x 462, 464 (2d Cir. 2002); *Granite Partners, L.P. v. Bear, Stearns & Co.*, 58 F. Supp. 2d 228, 259-61 (S.D.N.Y. 1999); *Black Horse Capital, LP v. Xstelos Holdings, Inc.*, 2014 WL 5025926, at *22 (Del. Ch. Sept. 30, 2014); *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 142-43 (Del. Ch. 2003).

applying for the credit card (and they do not allege that Mr. Gao received them at all).  *See supra* Part II.C.  They accordingly provide no basis for a fraudulent-inducement claim.  *See, e.g.*, *Campoverde v. Sony Pictures Entm't*, 2002 WL 31163804, at *9 (S.D.N.Y. Sept. 30, 2002) ("[W]hile a plaintiff may not 'dress up' a breach-of-contract claim as a fraud claim, a valid fraud claim may be premised on misrepresentations that were made before the formation of the contract and that induced the plaintiff to enter the contract."); *Philip A. Templeton, M.D., P.A. v. EmCare, Inc.*, 868 F. Supp. 2d 333, 340 (D. Del. 2012) ("[I]f the statements and assurances for which plaintiff bases his claim were all made at a point in time following the formation of a valid contract, then the fraud claims do not arise independently of the underlying contract and these claims 'are better addressed by applicable contract law." (internal quotation marks omitted)).

*Second*, the alleged misrepresentations in the "advertising and promotional materials" are the same forward-looking promises that Plaintiffs allege Defendants failed to honor in breaching the contract.  "Thus, Plaintiff[s'] allegations implicate Defendants['] failure to fulfill *future* promises and not Plaintiff[s'] reliance upon misrepresentations as to *present facts* during negotiations, making a tort claim inapposite." *Osan Ltd. v. Accenture LLP*, 454 F. Supp. 2d 46, 54 (E.D.N.Y. 2006).  "Notwithstanding Plaintiff[s'] assertion to the contrary, there is no reason for this Court to find other than what is apparent—that Plaintiff[s have] not alleged any misrepresentations that are collateral or extraneous to the [contract]." *Id.* at 54-55.[9]

## III. Plaintiffs Fail To State A Claim For Unjust Enrichment

Plaintiffs acknowledge that they can plead an unjust enrichment claim in the alternative only if "there is doubt surrounding the enforceability or the existence of the contract."  *Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 2130607, at *8 (Del. Ch. Aug. 26, 2005); *see also*

---

[9] Plaintiffs also fail to allege any other basis to bootstrap a fraud claim to their contract claim, such as a special duty or damages unrecoverable in contract.  *See Bridgestone/Firestone*, 98 F.3d at 20.

8

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987) (upholding dismissal of claim sounding in quasi-contract where it was "undisputed that the relationship between the parties was defined by a written contract, fully detailing all applicable terms and conditions"). Here there is no such doubt. Indeed, Plaintiffs' opposition repeats the allegation in the complaint—which is correct—that the parties entered into a "valid contract" that imposed obligations on both sides. Pls. Opp. 6 (quoting Am. Compl. ¶¶ 60, 61).

Plaintiffs try to backtrack by citing a passing allegation in the amended complaint that their contracts with Chase amounted "to an illusory promise rendering the rewards contract unenforceable" because, they say, Chase could "revoke[] … rightfully earned reward points of cardholders at CHASE'S sole discretion at anytime…." Am. Compl. ¶ 86. However, according to the Program Rules, Chase's ability to "cause [a cardholder] to forfeit any points/rebates in [his/her] Account" was not unrestricted, but instead limited to instances of default, account closure, and fraud or abuse. Am. Compl. Ex. A; *see also id*. Ex. D at 6. Although Chase could close an account for any reason, that measure entailed losing a customer; this detriment, among other things, means that the contract is not illusory.[10] Plaintiffs have cast no doubt on the enforceability of their agreements with Chase; rather, "it is clear from the face of the complaint that there exists an express contract that clearly controls." *Ameristar Casinos, Inc. v. Resorts*

---

[10]   Plaintiffs could also "close [their] Account[s] at any time." Am. Compl., Ex. B. at 3. A contract terminable at will is not unenforceable as illusory. *See Ketcham v. Hall Syndicate, Inc*., 236 N.Y.S.2d 206, 212 (Sup. Ct. 1962) ("Absent a fixed or determinable duration or an express provision that the duration is perpetual, the contract is one terminable at will."), *aff'd*, 242 N.Y.S.182 (App. Div. 1963); *cf. Carey's Home Constr., LLC v. Estate of Myers*, 2014 WL 1724835, at *4 (Del. Super. Apr. 16, 2014) ("An illusory contract argument succeeds if *one* party can terminate the contract at will." (emphasis added)). Given the open-ended nature of the contractual relationship between a credit-card issuer and credit-card holder, such agreements are generally terminable at will by either party. *See, e.g.*, Restatement (Second) of Contracts § 33 cmt. d (1979) ("When the contract calls for successive performances but is indefinite in duration, it is commonly terminable by either party, with or without a requirement of reasonable notice."). And, as Chase showed in its opening brief—and Plaintiffs ignore— courts regularly enforce credit-card agreements that authorize the issuer to close the account. Defs. Br. 6 & n.6.

*Int'l Holdings, LLC*, 2010 WL 1875631, at *13 (Del. Ch. May 11, 2010). Plaintiffs' unjust enrichment claim should therefore be dismissed.

### IV. Plaintiffs' OCSPA And FDUTPA Claims Fail

Plaintiff admit that they cannot state claims under the OCSPA and FDUTPA against their credit-card issuer, Chase Bank USA, N.A. Pls. Opp. 20 n.18. They nonetheless seek to maintain these claims against the parent holding company, JPMorgan Chase & Co., but they allege no facts specific to that entity, instead simply lumping it in with the credit-card bank and referring to both collectively as "Chase." This improper "group pleading" is insufficient to state a OCSPA, FDUTPA, or any other claim against the holding company. *See* Defs. Br. 17-18 (collecting cases). Plaintiffs say nothing on this point, and their conclusory assertion that JPMorgan Chase & Co. was part of a "scheme," undefined in either the complaint or the opposition, adds nothing and falls well short of stating a claim under Rule 8.

Improper group pleading aside, Plaintiffs do not allege facts sufficient to state an OCSPA or FDUTPA (or any other) claim against JPMorgan Chase & Co. They argue (but did not plead) that the holding company "was part of an unfair, deceptive and unlawful scheme which consisted specifically of revoking the duly earned Rewards points of credit card consumers who were not in default, without providing adequate compensation," and that "Defendants deceived the Plaintiffs into believing that by making purchases on their credit cards they would accumulate rewards points that would not expire." Pls. Opp. 21. But as explained already, the mutual right to close an account, and Chase's right to cause forfeiture of rewards points, were clearly provided for in the parties' agreements, and under such circumstances no OCSPA or FDUTPA claim can lie. *See* Defs. Br. 18.

### CONCLUSION

For the reasons above, the amended complaint should be dismissed with prejudice.

| | |
|---|---|
| Dated: New York, New York<br>December 23, 2014 | /s/  Noah Levine<br>Noah Levine<br>David Lesser<br>Alan E. Schoenfeld<br>Hanna A. Baek<br>WILMER CUTLER PICKERING<br>   HALE AND DORR LLP<br>7 World Trade Center<br>250 Greenwich Street<br>New York, NY 10007<br>(212) 230-8851 (phone)<br>(212) 230-8888 (fax)<br>noah.levine@wilmerhale.com<br>david.lesser@wilmerhale.com<br>alan.schoenfeld@wilmerhale.com<br>hanna.baek@wilmerhale.com<br><br>*Attorneys for Defendants JP Morgan Chase*<br>*& Co. and Chase Bank USA, N.A.* |