UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

HARRY GAO and ROBERTA SOCALL, on
behalf of themselves and all others similarly
situated,

                 *Plaintiffs*,

   -against-

JPMORGAN CHASE & CO. and CHASE
BANK USA, N.A.,

                 *Defendants*.

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6-9-15

14 Civ. 4281 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

    Plaintiffs Harry Gao ("Gao") and Roberta Socall ("Socall") (collectively, "Plaintiffs") bring this putative class action against Defendants JPMorgan Chase & Co. ("JPM") and Chase Bank USA, N.A. ("Chase") (collectively, "Defendants") for breach of contract, breach of the covenant of good faith and fair dealing, fraudulent inducement, unjust enrichment, and violations of the Ohio and Florida state statutes prohibiting unfair and deceptive acts and practices following the termination of their credit card accounts and the ensuing loss of their credit card rewards points. For the following reasons, the motion is granted in part and denied in part.

1

## BACKGROUND[1]

Rewards programs for cardholders are offered by almost all major credit card issuers in the United States, including Chase. Compl. ¶ 1. These programs "entice consumers to apply for credit cards and, once enrolled, to use the credit cards more frequently." *Id.* The Chase Freedom credit card is part of the Chase Ultimate Rewards program, pursuant to which cardholders earn one point or 1% rebate for each dollar charged to the card. *Id.* ¶ 5. Advertisements for the program "tout[] the fact that Chase rewards points do not expire." *Id.* The points earned by using the card "have a real, ascertainable value" and can be redeemed "for cash or merchandise." *Id.* ¶ 7.

In 2011, Gao applied for a Chase Freedom credit card at a Chase Bank branch location. *Id.* ¶ 36. Gao received the card in the mail, along with a copy of the Ultimate Rewards Program Rules and Regulations ("Program Rules") and a copy of the Cardmember Agreement. *Id.* ¶ 36, Ex. A, B, D, E. From 2011 until 2013, Gao made numerous purchases with his credit card, amounting to thousands of dollars. *Id.* ¶ 37. Pursuant to the Program Rules, Gao expected to receive one rewards point for every dollar charged to his credit card account. *Id.* He also expected that the rewards points would never expire. *Id.* Gao redeemed portions of his rewards points. *Id.* ¶ 7.

By July 2013, he had 10,000 rewards points, worth approximately $100. *Id.* ¶ 39. During this time, he had never missed a card payment and his account was in good standing. *Id.* In July 2013, he unexpectedly received written notification from Chase that his credit card was terminated. *Id.* ¶ 40. Chase revoked the unredeemed rewards points when terminating his account. *Id.* Chase did not compensate Gao for the revocation of these points. *Id.*

---

[1] The allegations from the Amended Complaint and the attached exhibits are taken as true.

Socall "applied for and received a Chase Freedom credit card in approximately 2006." *Id.* ¶ 41. In 2010, she applied for and received another Chase Freedom card. *Id.* With both of these cards, she received copies of the Program Rules. *Id.* Socall made numerous purchases with these credit cards, amounting to thousands of dollars. *Id.* ¶ 42. She made these purchases "with the belief that her expenditures would result in the accumulation of rewards points or rebates and that they would not expire." *Id.* ¶ 42. The Program Rules specifically stated, "Points/rebates earned in this Program will not expire." *Id.* As of September 2011, Socall had over 12,000 points entitling her to a cash rebate of over $120. *Id.* ¶ 43. Socall never missed a monthly card payment and her account was in good standing. *Id.* Socall redeemed "a portion of [her] Chase Ultimate Rewards points without difficulty." *Id.* ¶ 7. In September 2011, she unexpectedly received written notification from Chase that her credit cards were terminated. *Id.* ¶ 44. Chase revoked the unredeemed rewards points when terminating her accounts. *Id.* Chase did not compensate Socall for the revocation of these points. *Id.*

This case is not about Gao and Socall getting their points back or a cash rebate. Instead, they seek to represent one main class and two subclasses of putative plaintiffs. First, they seek to represent a "National Class," consisting of "cardholders enrolled in a Chase Rewards program during the applicable statutory period who were not in Default and had their accounts closed and their rewards points taken without compensation." *Id.* ¶ 48. Gao seeks to represent an "Ohio Subclass," consisting of Ohio residents enrolled in the Rewards program "who were not in Default and had their accounts closed and their rewards points taken without compensation." *Id.* Socall seeks to represent a "Florida Subclass," consisting of Florida residents enrolled in the Rewards program "who were not in Default and had their accounts closed and their rewards points taken without compensation." *Id.* ¶ 48.

3

## DISCUSSION

### I. Applicable Law

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At this stage, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The Court does not "assay the weight of the evidence which might be offered in support thereof" but instead "assess[es] the legal feasibility of the complaint." *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011) (internal citation and quotation marks omitted).

### II. Analysis

#### A. Breach of Contract[2]

To state a claim for breach of contract under Delaware law, a plaintiff must allege "(1) the existence of the contract, whether express or implied; (2) the breach of an obligation imposed by that contract; and (3) any damages that the plaintiff incurred as a result of the breach." *Yellow Pages Grp., LLC v. Ziplocal, LP*, 2015 WL 358279, at *3 (Del. Super. Ct. 2015) (citing *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003)).

Defendants move to dismiss the contract claim because Plaintiffs do not allege a breach of any express contract term. Def. Mem. at 5-8. Plaintiffs respond that Defendants breached the contract by failing "to compensate Plaintiffs for earned but unredeemed rewards points." Pl. Mem. at 6. Plaintiffs also argue that competing provisions in the contract render it ambiguous,

---

[2] The parties agree that pursuant to the Cardmember Agreement, Delaware state law governs their contract-based disputes. *See* Pl. Mem. at 5 n.4; Def. Mem. at 5 n.5.

4

and that accordingly the Court should not dismiss the claim because the ambiguity should be construed in Plaintiffs' favor. *Id.* at 6-7.

Plaintiffs' argument fails, and their contract claim must be dismissed. Plaintiffs have pointed to no provision of the contract, or obligation imposed by the contract, that has been breached by Defendants. Plaintiffs' opposition to the motion to dismiss simply reinforces that point. Plaintiffs argue that they have "adequately pled that the unwarranted taking of rewards points violates the terms of the contract," *id.* at 6, but they fail to identify any provision of the contract that would demonstrate such a breach, even in the face of Defendants' argument that such failure warrants dismissal of the breach of contract claim.

Plaintiffs' contractual ambiguity argument also fails. Plaintiffs assert that the termination provision in the Program Rules, which states "if your Account is closed for any reason, your membership in the Program will be terminated," contradicts the expiration provision, which states that "Points/rebates earned in this Program will not expire." *Id.* The word "expire" is not ambiguous in this situation, and does not mean that the points will never become invalid.

Ambiguity in a contract exists where "'the provisions in controversy are reasonably susceptible of different interpretations or may have two or more different meanings.'" *Preferred Inv. Servs., Inc. v. T & H Bail Bonds, Inc.*, 2013 WL 3934992, at *12 (Del. Ch. 2013) (quoting *E.I. du Pont de Nemours & Co. v. Allstate Ins. Co.*, 693 A.2d 1059, 1061 (Del. 1997)). Plaintiffs' suggested interpretation here is not reasonable. Read together, the expiration provision clearly conveys the message that the points are not limited temporally, but the termination provision alerts the accountholder that membership may be terminated and points forfeited for reasons other than temporal limitations. In addition, the Program Rules also state that if "your Account is closed for any reason . . . we reserve the right . . . to cause you to forfeit

any points/rebates in your Account. If your points/rebates are forfeited for any reason, we will not reinstate these points/rebates to your Account." Ex. A, ¶ 1. Reading the expiration provision in the context of the remainder of the Program Rules eliminates any reasonable interpretation of the expiration provision as a promise that a cardholder's points will never become invalid.

Accordingly, Plaintiffs' breach of contract claim is dismissed.

### B. Breach of the Covenant of Good Faith and Fair Dealing

Defendants move to dismiss Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing for failure to state a claim, arguing that the express contract terms allow for termination and forfeiture of points, and there is no evidence the parties would have agreed to limit Defendants' authority to cause the forfeiture of points. Def. Mem. at 8-11.

Under Delaware law, a party is liable for a breach of the implied covenant of good faith and fair dealing "when their conduct frustrates the 'overarching purpose' of the contract by taking advantage of their position to control implementation of the agreement's terms." *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) (quoting *Breakaway Solutions, Inc. v. Morgan Stanley & Co. Inc.*, 2004 WL 1949300, at *12 (Del. Ch. 2004)). The usage of this doctrine, however, "should be a rare and fact-intensive exercise, governed solely by issues of compelling fairness," and "one generally cannot base a claim for breach of the implied covenant on conduct authorized by the terms of the agreement." *Dunlap*, 878 A.2d at 441-42 (internal citations, quotation marks, and alterations omitted). The implied covenant "functions by requiring the Court to discover additional terms from an agreement; terms in line with the spirit of the agreement but absent from those expressed by the parties." *BAE Sys. Info. & Elec. Sys. Integration Inc. v. Lockheed Martin Corp.*, 2009 WL 264088, at *6 (Del. Ch. 2009).

6

Allowing an implied provision prohibiting the unilateral forfeiture of points by Defendants, Pl. Mem. at 8-9, would contradict the express language of the contract which explicitly provides for forfeiture, as discussed above. This case does not present a situation where the contract at issue implies the provision of rights not expressly included, such that the Court must read in such a provision to ensure fairness and preserve the contract's purpose. Instead here, the contract speaks to the relevant issue, and explicitly permits termination. The Court cannot "rewrite the contract to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal." *Nemec v. Shrader*, 991 A.2d 1120, 1125-26 (Del. 2010). The contract permitted Defendants "to take the Plaintiffs' earned reward points for no reason," Pl. Mem. at 9, and no covenant will be implied to prevent conduct which is expressly allowed. Accordingly, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is dismissed.

### C.  Fraudulent Inducement[3]

Defendants move to dismiss Plaintiffs' fraudulent inducement claim on the grounds that (i) they have failed to allege a misstatement, intent, and reliance, and (ii) that the fraudulent inducement claim is insufficiently distinct from the breach of contract claim. Def. Mem. at 11-15.

---

[3] In their opposition, Plaintiffs argue that Delaware law does not apply to their non-contractual claims. Pl. Mem. at 10 n.7. Plaintiffs fail to identify what governing law they seek to apply, but rely on New York law to support their fraudulent inducement and unjust enrichment claims. Defendants do not oppose the application of New York law and note that "the elements [of fraud and unjust enrichment] are the same under both New York and Delaware law." Def. Reply at 4 n.4. Accordingly, the Court will apply New York law to the non-contractual claims. *See Golden Pac. Bancorp v. Fed. Deposit Ins. Corp.*, 273 F.3d 509, 514 n.4 (2d Cir. 2001).

A fraudulent inducement claim under New York law requires a plaintiff to allege "(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by appellants; and (iv) resulting damages." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 62 (2d Cir. 2012) (internal citation and quotation marks omitted). Where a fraudulent inducement claim concerns the same facts as a breach of contract claim, the fraud claim is only permissible when it points to "a fraudulent misrepresentation that is collateral or extraneous to the contract." *Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*, 2015 WL 769573, at *6 (S.D.N.Y. Feb. 24, 2015) (internal citations and quotation marks omitted).

Here, there is no actionable misstatement. Plaintiffs claim that three statements constitute actionable misstatements from Defendants' promotional materials: the statement that the program allowed "unlimited earnings;" that "there was no limit on the amount of points earned;" that there was "no expiration on points;" and "that there were no caps or limits on earnings." Pl. Mem. at 11. But the face of the complaint reveals that none of these statements are untrue, and therefore cannot be fraudulent.

Plaintiffs seek leave to replead their fraudulent inducement claim. Were Plaintiffs to plead their fraudulent inducement claim by alleging actionable misstatements in the promotional materials with the specificity required by Fed. R. Civ. P. 9(b), Plaintiffs may be able to plead a fraudulent inducement claim. *See Schlenger v. Fid. Emp'r Servs. Co., LLC*, 785 F. Supp. 2d 317, 352-53 (S.D.N.Y. 2011). While Plaintiffs do not appear to have the strongest claim for fraudulent inducement, the allegations meet the baseline requirement for leave to replead.

Plaintiffs have adequately alleged intent[4] and reliance,[5] and Plaintiffs' claims regarding misleading promotional and advertising materials render the fraudulent inducement claim sufficiently collateral to the parties' contract. *See, e.g., Le Metier*, 2015 WL 769573, at *6 (citing *Saleemi v. Pencom Sys. Inc.*, 2000 WL 640647, at *4 (S.D.N.Y. May 17, 2000)) (fraud claim not duplicative of breach of contract claim where it is based on misrepresentations made prior to formation of the contract which induced entrance into the contract). The Court notes that it has not considered Plaintiffs' argument that they have alleged a material omission because of a duty to disclose, because Plaintiffs did not make such an allegation in their complaint; Plaintiffs may seek to include such a claim in their amended pleading.

### D. Unjust Enrichment

Defendants move to dismiss Plaintiffs' unjust enrichment claims on the grounds that the claim is barred because the parties' relationships are governed by a written contract. Def. Mem. at 18-20. While Defendants are correct that a claim for unjust enrichment does not lie where "'a valid and enforceable written contract governing a particular subject matter'" exists, *Grant & Eisenhofer, P.A. v. Bernstein Liebhard LLP*, 2015 WL 1809001, at *5 (S.D.N.Y. Apr. 20, 2015) (quoting *In re First Cent. Fin. Corp.*, 377 F.3d 209, 213 (2d Cir. 2004)), here Plaintiffs bring an unjust enrichment claim in the alternative, alleging that the contract is not enforceable.

---

[4] Plaintiffs have adequately alleged Defendants' motive and opportunity, Pl. Mem. at 13-15, and Plaintiffs' allegation that Defendants sought to close accounts prior to rewards redemption for financial reasons is entirely plausible.

[5] Defendants argue that Plaintiffs did not allege that they received the promotional materials prior to entering into the contract and therefore could not have relied on them. Def. Reply at 6-7. The Court draws all reasonable inferences in Plaintiffs' favor on a motion to dismiss, and so the Court interprets the Complaint as alleging that Plaintiffs viewed some element of Defendants' "pervasive mass advertising," Compl. ¶ 5, prior to entering into the contract.

Under both Delaware and New York law, if the validity or enforceability of a contract "is in doubt or uncertain," "claims of unjust enrichment may survive a motion to dismiss." *REDUS Peninsula Millsboro, LLC v. Mayer*, 2014 WL 4261988, at *5 (Del. Ch. 2014) (internal citation and quotation marks omitted); *accord DeWitt Stern Grp., Inc. v. Eisenberg*, 14 F. Supp. 3d 480, 485 (S.D.N.Y. 2014) (unjust enrichment claim could proceed where Plaintiff had pled unenforceability of contract). Here, in addition to the breach of contract claim, Plaintiffs have alleged that the contract between the parties amounts to "an illusory promise rendering the rewards contract unenforceable." Compl. ¶ 86. Defendants argue that it is clear from the face of the complaint that the contract is enforceable, Def. Reply at 9, but this is not so, and whether the contract was illusory will not be determined at this stage. While the Court holds above that Plaintiffs did not state a claim for breach of contract, that does not equate to a holding that the contract is valid and enforceable. In light of Plaintiffs' allegation regarding the contract's enforceability, the Court may later determine the contract unenforceable, and could then consider in the alternative a claim for unjust enrichment. At this stage in the litigation, Plaintiffs may plead both that a valid (breached) contract exists and that the contract is unenforceable. *See Intellectual Capital Partner v. Institutional Credit Partners LLC*, 2009 WL 1974392, at *8 (S.D.N.Y. July 8, 2009). Accordingly, Defendants' motion to dismiss the unjust enrichment claim is denied.

### E. State Statute Violations

Under the Ohio Consumer Sales Practices Act (the "OCSPA"), Ohio Rev. Code Ann. § 1345.01 *et seq.*, "no supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." *Id.* § 1345.02. To state a claim for violations of the OCSPA, a plaintiff must allege "that the defendant performed an act or omission that was unfair or

10

deceptive, and that the alleged act impacted the plaintiffs' decision to purchase the item at issue." *Robinson v. Kia Motors Am. Inc.*, 2014 WL 5155969, at *5 (D.N.J. Oct. 14, 2014) (internal citation and quotation marks omitted) (applying Ohio law).[6] Likewise, the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fl. Stat. § 501.204(1). A prima facie claim under the FDUTPA requires plaintiff to allege "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Wright v. Emory*, 41 So. 3d 290, 292-93 (Fla. Dist. Ct. App. 2010) (internal citation and quotation marks omitted).

Plaintiffs concede that the Florida and Ohio statutes do not apply to Chase and agree to dismiss this claim against Chase only. Pl. Mem. at 20 n.18. As to the OCSPA and the FDUTPA claims against JPM, Defendants move to dismiss because the complaint contains improper group pleading against JPM and because Defendants' conduct was authorized by contract and therefore did not violate these statutes. Def. Mem. at 15-18.

Defendants' group pleading argument fails. Defendants assert that the complaint fails to make specific allegations against JPM. *Id.* at 17-18. But Defendants have failed to explain why this results in the complete dismissal of the claim against JPM. Fed. R. Civ. P. 8 requires only that a complaint provide "the defendant [with] fair notice of what the claim is and the ground upon which it rests." *Twombly*, 550 U.S. at 555 (internal citations, quotation marks, and alterations omitted). These claims against JPM, and the grounds upon which they rest, are clear

---

[6] The Court notes its doubts about Plaintiffs' ability to maintain a class action under the OCSPA because of the statute's class action notice requirement. *See Robinson v. Kia Motors Am.*, 2014 WL 5155969, at *4-5 (D.N.J. 2014) (citing Ohio Rev. Code Ann. § 1345.09(b)). Because Defendants have not raised this provision as grounds to dismiss Plaintiffs' class action claim under the OCSPA, the Court does not consider it for purposes of this motion.

from the complaint. *See, e.g., Reich v. Lopez*, 38 F. Supp. 3d 436, 462-63 (S.D.N.Y. 2014). Accordingly, this argument is rejected.

Defendants also assert that both the OCSPA and the FDUTPA do not allow claims where a defendants' conduct complied with an express contract. Def. Mem. at 18. Defendants may well be correct, but not at this stage of the proceedings. The cases relied on by Defendants do not show that the OCSPA and FDUTPA bar claims where the complained-of conduct complied with an express contract as a matter of law. *Englert v. Nutritional Sciences, LLC*, 2008 WL 4416597 (Ohio Ct. App. 2008), a grant of summary judgment, found no OCSPA violation where the contract at issue had already been found enforceable. Likewise, *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281 (11th Cir. 2007), held that the relevant contract was valid. And *Chastain v. N.S.S. Acquisition Corp.*, 2009 WL 1971621 (S.D. Fla. July 8, 2009) does not hold that, as a matter of law, compliance with a contract shields a defendant from the FDUTPA. Even if such a doctrine could be found in the cases cited by Defendants, such a holding is inapplicable here, where Plaintiffs have also alleged the unenforceability of the contract and the deceptive nature of promotional materials.

Defendants have failed to demonstrate that Plaintiffs' claims do not meet the pleading requirements of either the OCSPA or the FDUTPA. Nor have Defendants demonstrated that these statutes bar Plaintiffs' claim as a matter of law. Plaintiffs have alleged that Defendants' acts are deceptive and are entitled at this point to proceed with these claims under these statutes. Accordingly, Defendants' motion to dismiss these claims is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted with respect to Plaintiffs' claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and fraudulent inducement. As to fraudulent inducement, the Court grants leave to replead but only in the event that Plaintiffs can allege actionable misrepresentations with the specificity required by Fed. R. Civ. P. 9(b) by June 29, 2015. Defendants' motion to dismiss the unjust enrichment claim and the OCSPA and FDUTPA claims is denied.

The parties are directed to file a civil case management plan by July 2, 2015. The Clerk of the Court is directed to terminate the motion at Docket Number 26.

Dated: New York, New York  
June 9, 2015

SO ORDERED

*Paul Crotty*

PAUL A. CROTTY  
United States District Judge