# EXHIBIT A

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| HARRY GAO and ROBERTA SOCALL,<br>on behalf of themselves and<br>all others similarly situated,<br><br>                Plaintiffs,<br><br>   v.<br><br>JPMORGAN CHASE & CO. and<br>CHASE BANK USA, N.A.<br><br>              Defendants. | Case No. 1:14-cv-04281-PAC<br><br>JURY TRIAL DEMANDED |

## THIRD AMENDED CLASS ACTION COMPLAINT

Plaintiffs, Harry Gao and Roberta Socall, on behalf of themselves and all others similarly situated, by and through their undersigned attorneys, file this third amended class action complaint against Defendants JPMorgan Chase & Co. and Chase Bank USA, N.A. (collectively referred to as "CHASE" or the "Defendants") and allege as follows:

## NATURE OF THE ACTION

1.      Virtually all major credit card issuers in the United States, including CHASE, offer rewards programs to their cardholders.  Rewards programs entice consumers to apply for credit cards and, once enrolled, to use the credit cards more frequently.  Typically, cardholders earn a certain number of "points" for each dollar of purchases charged to a rewards credit card account.  These points can be redeemed for airline miles, hotel stays, merchandise, services, or even cash.

2.      There are various types of credit card rewards programs on the market today and credit card issuers typically have several different programs available at one time, with some programs available only for a limited time or to a selected group of customers.

3.     The Consumer Financial Protection Bureau recently reported that "for certain consumers, comparison shopping for new credit cards frequently revolves around considering different rewards programs.   Rewards offers can be highly complex, with detailed rules regarding the eligibility for sign-on bonuses, the value of earned points, the rate at which they are earned, and the rules governing their forfeiture."   Consumer Fraud Protection Bureau, CARD Act Report: A Review Of The Impact Of The Card Act On The Consumer Credit Card Market, at 8 (2013). Available at, http://files.consumerfinance.gov/f/201309_cfpb_card-act-report.pdf (last visited June 11, 2014) ("Card Act Report").   For that reason, the CFPB intends to "review whether rewards disclosures are being made in a clear and transparent manner, as well as assess whether additional action is warranted." *Id.*

4.     CHASE, like other credit card issuers, offers its cardholders a wide array of credit card rewards programs.   For example, CHASE offers cardholders a travel rewards credit card that allows cardholders to redeem points for air travel or hotel stays.   CHASE also offers a cash back rewards program that allows cardholders to redeem points for gas, groceries, drug store purchases, and more.

5.     Over the past decade, Defendant CHASE has engaged in a ubiquitous, pervasive media marketing campaign promoting their various credit card rewards programs.   CHASE's marketing campaign has attempted to persuade consumers to believe that CHASE offered the most advantageous credit card rewards programs in the industry and headlined its claims with the statement that CHASE's rewards points "never expire."   This representation, unique in the industry, induced Plaintiffs and Class members to apply for and utilize CHASE rewards credit cards.   CHASE's relentless, omnipresent media campaign made their rewards cards some of the most widely held and used credit cards in the nation.

6.     However, at the time Plaintiffs applied for and utilized their CHASE Rewards credit cards, CHASE purposefully failed to inform cardholders that their credit card points could be taken from them at anytime for any reason at CHASE's sole discretion.   Indeed, this information was purposely omitted from any of CHASE's marketing, advertising, and promotional materials.

7.     Upon information and belief, the CHASE Freedom card is part of the CHASE Ultimate Rewards program.   This program allows cardholders to earn one (1) point or a 1% rebate for each dollar charged to the card.   In addition, CHASE Ultimate Rewards cardholders could earn an additional one (1) point or 1% rebate for each dollar of eligible airfare purchases made online through a program booking site.   According to the CHASE Ultimate Rewards Program's Rules and Regulations, "Points/rebates earned in this Program *will not* expire."   (See, "Ultimate Rewards Program Rules and Regulations" attached hereto, as "Exhibits A, C, D, E") (emphasis added).   In addition, pervasive mass advertising by Defendants touted the fact that CHASE rewards points do not expire.

8.     As a result of CHASE's representations and omissions regarding their credit card rewards programs, Plaintiff Harry Gao and Roberta Socall each were induced to apply for and utilize CHASE Freedom credit cards.

9.     Plaintiffs Gao and Socall each charged thousands of dollars in purchases to their CHASE Freedom credit cards.   Plaintiffs, like thousands of other CHASE Ultimate Rewards cardholders, did so with the belief that their expenditures would result in the accumulation of rewards points or rebates and would not expire.   The points that Plaintiffs earned, by making expenditures on their CHASE Freedom card, have a real, ascertainable value and could have

been redeemed for cash or merchandise.  In fact, Plaintiffs had in the past redeemed a portion of their CHASE Ultimate Rewards points without difficulty.

10.     Nevertheless, Plaintiffs received written notification that CHASE had terminated their CHASE Freedom credit cards, despite the fact their accounts had never been in Default, as defined by the CHASE cardmember agreement or the word's common usage, and despite the fact that they never missed a monthly payment.  In terminating their accounts, CHASE stripped Plaintiffs of all the unredeemed rewards points that they had earned – without any form of compensation whatsoever.

11.     Defendants' conduct in taking reward points of cardholders at CHASE's sole discretion at anytime, even when the cardholder's account was not in default, without any form of compensation to cardholders, is deceptive and unlawful.  Plaintiffs, therefore, bring this action to redress this wrong on behalf of themselves and the Class they seek to represent.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), in that:

    (a)     This is a class action involving 100 or more class members;

    (b)     Plaintiffs, are diverse in citizenship from Defendants, JPMorgan Chase & Co. and Chase Bank USA, N.A., which are incorporated in Delaware and have principal places of business in New York; and

    (c)     and the matter in controversy exceeds $5,000,000, exclusive of interests and costs.

13.     This case is properly maintainable as a class action pursuant to and in accordance with Rule 23(a) of the Federal Rules of Civil Procedure in that:

14.     The members of the Class (as defined below) are so numerous that joinder of all members is impractical;

15.     There are substantial questions of law and fact common to the Class including those set forth in greater particularity herein;

16.     This case is properly maintainable as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

     a.     questions of law and fact enumerated below, which are all common to the Class, predominate over any questions of law or fact affecting only individual members of the class;

     b.     a class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

     c.     the relief sought in this class action will effectively and efficiently provide relief to all members of the class; and

     d.     there are no unusual difficulties foreseen in the management of this class action.

17.     The Court has personal jurisdiction over CHASE, which has at least minimum contacts with this State because it has principal places of business in this state and has conducted business here.  Further, CHASE has purposefully availed itself of the resources and privileges of this State through its promotion, sales, and marketing efforts.

18.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

19.     This Court is a proper venue in which to bring this action, pursuant to 28 U.S.C. § 1391, inasmuch as a substantial part of the events or omissions giving rise to the claims occurred within the district in which this Court sits.

## THE PARTIES

20.     Plaintiff Harry Gao (Plaintiff Gao or "Gao") is a citizen of Dublin, OH.  Since 2011, Plaintiff Gao has had a CHASE Freedom credit card in his name.

21.     Plaintiff Roberta Socall (Plaintiff Socall or "Socall") is a citizen of Fort Lauderdale, FL.   At relevant times herein, Plaintiff Socall has had two different CHASE Freedom credit cards in her name.

22.     Upon information and belief, Defendant JPMorgan Chase & Co. ("JPMorgan") is a publicly traded company incorporated in Delaware with a principal place of business in New York, New York.

23.     Upon information and belief, JPMorgan is a multinational banking and financial services holding company which controls various entities, including Defendant Chase Bank, NA. It is the largest bank in the United States, with total assets of US $2.415 trillion.  The company was formed in 2000, when Chase Manhattan Corporation merged with J.P. Morgan & Co.

24.     Service can be made upon JPMorgan registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

25.     Chase Bank USA, N.A. ("Chase Bank") is incorporated in Delaware with a principal place of business in New York, New York.  Upon information and belief, Defendant Chase Bank is a national bank subsidiary of JPMorgan and the credit card issuer here.

26.     Service can be made upon Chase Bank's registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

27.     While modern credit cards made their first appearance in the 1950s, credit card rewards programs were not developed until 1984 when Diners Club created the first rewards program.  By the late 1990's, credit card rewards programs offered robust redemption offerings that included retail, dining, cash, airline travel, and hotel stays.  This multi-reward model is the framework used by several large credit card issuers programs today.

28.     During the 1990's, credit card companies were looking for ways to improve the value of their offerings.  Annual fees dropped to zero on many cards, and interest rates were set at historic lows.  However, since many credit card issuers used similar tactics, other incentives were needed.  Credit card reward programs that had once been used only on certain specialized cards for niche markets such as frequent flyers were significantly expanded.

29.     Rewards programs have now grown to cater to vastly diverse card member tastes in an attempt to broaden their appeal.  While some aspects of large rewards programs are unique, there is little doubt that a basic rewards offering has become a market necessity and an important commodity.

30.     Indeed, a 2011 Mercator Customer Monitor ("Mercator") survey found that "consumers said rewards were the number one reason to apply for a selected card." Card Act Report, at 82.

31.     The premise of credit card rewards programs is simple.  Credit card points and miles are earned whenever the credit card is used.  The standard model is that for every one dollar spent on the card, one point or one airline mile is earned.  Some cards have special provisions that allow additional points to be earned in certain situations.  For example, branded cards for a retail establishment, airline, or hotel may offer more points for purchases made directly from that company.  In addition, some credit cards offer differing point earnings based upon certain categories of spending, such as offering more points for each dollar spent at gas stations or grocery stores.

32.     Points and miles that are earned may be redeemed for rewards.  Rewards cards can generally be broken into groups based on the type of rewards they offer.  Some cards offer

rewards in a number of categories; others are more specialized and may provide only one or two incentives.  The most common types of incentives programs are as follows:

- Airline rewards cards that can be redeemed toward flights;

- Cash back rewards cards that return a percentage of the money a person spends on the card; and

- Points cards that can be redeemed for merchandise, gift cards, or services.

33.    Credit cards offer rewards in order to appeal to a large market segment that might otherwise be unprofitable.  Offering rewards to this segment helps credit card companies lower account acquisition costs and increases interchange revenues, which make the segment more profitable.

34.    Credit cards offering rewards target consumers who might otherwise shun the use of credit.  Rewards give people an incentive to open accounts, and use credit cards more than other forms of payments: cash, checks, debit cards, etc.  That is, rewards cards provide an incentive for people to spend more money on credit rather than using cash.

35.    Indeed, "Mercator's 2012 survey showed that 'more credit and charge owners [] said they try to use the credit card with the richest rewards than said they try to use the card with the lowest rates and fees [] or for purchases they want to finance []."  Card Act Report, at 82-83.

36.    CHASE offers cardholders a wide variety of credit card rewards programs.  For example, below is a list of CHASE Rewards cards that the company currently offers through the CHASE website.

    i.      Chase Freedom® Card

    ii.     CHASE SAPPHIRE *PREFERRED*® CARD

    iii.    CHASE SAPPHIRE® CARD

    iv.     United MileagePlus® Explorer Card

    v.      United MileagePlus® Club Card

vi.    Southwest Airlines® Rapid Rewards® Premier Card

vii.    British Airways Visa Signature® Card

viii.    Marriott Rewards® Premier Visa® Signature Card

ix.    Marriott Rewards® Credit Card

x.    Disney Premier Visa® Card

xi.    *Disney Rewards*® Visa® Card

xii.    The Ritz-Carlton Rewards® Credit Card

xiii.    IHG® Rewards Club Select Credit Card

xiv.    Fairmont Visa Signature® Credit Card

xv.    Amazon.com Rewards Visa Card

xvi.    Amtrak Guest Rewards® MasterCard®

xvii.    BP Visa® With Pump Rewards

xviii.    Ink Plus® Business Credit Card

xix.    Ink Bold® Business Charge Card

xx.    Ink Cash® Business Credit Card

*See* https://creditcards.chase.com/rewards-credit-cards.aspx (last visited June 2014).

37.    Most, if not all of these rewards credit cards also carry an annual fee. Typically, CHASE charges its cardholders an annual fee of $95.00 in exchange for providing a card with non-expiring, cash-equivalent rewards as an option.

38.    The CHASE Ultimate Rewards programs allowed cardholders to earn one (1) point or a 1% rebate for each dollar charged to the card. In addition, cardholders could earn an additional one (1) point or 1% rebate for each dollar of eligible airfare purchases made online through a program booking tool. *See* "Exhibits A, D, E".

## FACTUAL ALLEGATIONS AS TO PLAINTIFF HARRY GAO

39.    In approximately 2011, Plaintiff Harry Gao was in the market for a new personal credit card. Based in part upon pervasive advertising and marketing materials for Chase Rewards credit cards, Mr. Gao was persuaded that Chase offered a competitive rewards program

in which he would receive points for every dollar he spent using the card and the points would never expire. In 2011, after taking notice of such promotional materials, Mr. Gao applied for a CHASE Freedom credit card in person at a CHASE Bank branch location.

40.     Upon information and belief, the CHASE Freedom card is part of the CHASE Ultimate Rewards program. Shortly after applying for the credit card, Plaintiff Gao received his CHASE Freedom credit card in the mail. Along with the card, Plaintiff Gao received a copy of the Ultimate Rewards Program Rules and Regulations and a copy of the Cardmember Agreement. *See*, Cardmember Agreement, attached as Exhibit B.

41.     As a CHASE Rewards cardholder, Plaintiff Harry Gao was charged and paid an annual fee of $95.00 for having a rewards card.

42.     From 2011 until 2013, the two (2) years that Plaintiff Harry Gao was a CHASE Freedom cardholder, he made numerous purchases with his credit card that amounted to thousands of dollars. It was Plaintiff Gao's expectation, based on the terms of the Ultimate Rewards Program Rules and Regulations, as well as CHASE's marketing efforts, that he would receive one (1) point for every dollar charged to his credit card account and the rewards points would never expire.

43.     Due in large part to his desire to accumulate valuable rewards points over time, and CHASE's pervasive marketing and advertising campaign that its points "never expire," Plaintiff Gao, like thousands of CHASE Rewards cardholders, made purchases on his CHASE credit card with the belief that his expenditures would result in the accumulation of rewards points or rebates and that they would not expire. In fact, the CHASE Ultimate Reward Rules and Regulations specifically stated, "Points/rebates earned in this Program will not expire." *See* "Exhibit A".

44.     Prior to applying for and enrolling in the CHASE Rewards program, CHASE never informed Plaintiff Gao that the rewards points which he would earn could be taken from him at anytime for any reason at CHASE's sole discretion.

45.     As of July 2013, Plaintiff Gao had in his possession approximately 10,000 points. The points earned by Plaintiff Gao entitled him to a cash rebate of approximately $100.00. During this time, Plaintiff Gao had never missed a monthly credit card payment and his account was in good standing.

46.     Nevertheless, in or about July 2013, Plaintiff Gao unexpectedly received written notification that CHASE had terminated his Ultimate Rewards credit card, despite the fact that his account had never been in Default, and took all of the unredeemed rewards points that Plaintiff Gao had earned without any form of compensation whatsoever.   Had Plaintiff Gao known that CHASE could take his points after he earned them for no reason at all, he would not have chosen the Chase credit card, paid the enrollment fee or utilized the credit card to make purchases.

### FACTUAL ALLEGATIONS AS TO PLAINTIFF ROBERTA SOCALL

47.     In approximately 2006, Plaintiff Roberta Socall wanted to obtain a new personal credit card.   Based in part upon pervasive advertising and marketing materials for CHASE Rewards credit cards, Ms. Socall was also persuaded that CHASE offered a competitive rewards program in which she would receive points for every dollar she spent using the card and the points would never expire.   In 2006, after taking notice of such promotional materials, Plaintiff Roberta Socall applied for and received a CHASE Freedom credit card.   Due in part to her desire to accumulate valuable rewards points over time, and CHASE's marketing efforts, Ms. Socall, subsequently applied for and received another CHASE Freedom card in approximately 2010.

Shortly after applying for the credit cards, Plaintiff Socall received her CHASE Freedom credit cards in the mail. Along with the cards, Plaintiff Socall received copies of the Ultimate Rewards Program Rules and Regulations. *See*, "Exhibits C-E".

48.     As a CHASE Rewards cardholder, Plaintiff Roberta Socall was charged and paid an annual fee of $95.00 for having a rewards card.

49.     Because of Chase's marketing and advertising campaign, Plaintiff Socall, like thousands of CHASE Rewards cardholders, made purchases on her CHASE credit card with the belief that her expenditures would result in the accumulation of rewards points or rebates and that they would not expire.

50.     Prior to applying for and enrolling in the CHASE Rewards program, CHASE never informed Plaintiff Socall that the rewards points which she would earn could be taken from her at anytime for any reason at CHASE's sole discretion.

51.     As of September 2011, Plaintiff Socall had in her possession in excess of 12,000 points. The points earned by Plaintiff Socall entitled her to a cash rebate in excess of $120.00. During this time, Plaintiff Socall had never missed a monthly credit card payment and her account was in good standing.

52.     Nevertheless, on or about September 2011, Plaintiff Socall unexpectedly received written notification that CHASE had terminated her Ultimate Rewards credit cards, despite the fact that her accounts had never been in Default. In terminating her accounts, CHASE took the unredeemed rewards points that Plaintiff Socall had earned without any form of compensation whatsoever.

53.     Had Plaintiff Socall known that CHASE could take her points after she earned them for no reason at all, she would not have chosen the Chase credit card, paid the enrollment fee or utilized the credit card to make purchases.

## CLASS ACTION ALLEGATIONS

54.     Plaintiffs bring this action on behalf of themselves and all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

55.     Plaintiffs bring this action as class representatives to recover damages and/or refunds from CHASE for fraudulent inducement, violations of the consumer protection laws as listed below, and unjust enrichment.

56.     This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of the Federal Rules of Civil Procedure Rule 23(a) and (b).

57.     Plaintiffs seek certification of the classes (collectively referred to herein as the "Class") defined as follows:

> All CHASE Rewards cardholders enrolled in a CHASE Rewards program during the applicable statutory period who were not in Default and had their accounts closed and their rewards points taken without compensation (the "National Class").

> All CHASE Rewards cardholders residing in the State of Ohio enrolled in CHASE Rewards program during the applicable statutory period who were not in Default and had their accounts closed and their rewards points taken without compensation (the "Ohio Subclass").

> All CHASE Rewards cardholders residing in the State of Florida enrolled in CHASE Rewards program during the applicable statutory period who were not in Default and had their accounts closed and their rewards points taken without compensation (the "Florida Subclass").

58.     Plaintiffs allege that CHASE's conduct in taking the rewards points that Plaintiffs earned were not isolated transactions but were part of a continuing course of conduct in which

CHASE engaged in over a discrete period of time. Because Defendants' scheme was part of a continuing course of conduct, Plaintiffs may prevail on claims resulting from any act that was part of that continuing course of conduct, even if the particular act was outside the applicable limitations period.

59.    Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

60.    Excluded from the Class are:

    a.    Defendants and any entities in which Defendants have a controlling interest;

    b.    Defendants' officers, directors, agents, and representatives and their family members;

    c.    Any entities in which Defendants' officers or directors are employed;

    d.    The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

    e.    All persons or entities that properly execute and timely file a request for exclusion from the Class;

    f.    Any attorneys representing Plaintiffs or the Class; and

    g.    All governmental entities.

61.    Numerosity – Fed. R. Civ. P. 23(a)(1). Upon information and belief, the members of the Class are so numerous that joinder would be impracticable. This belief stems from, among other things, numerous online consumer complaints made by CHASE credit cardholders regarding the very same conduct as alleged herein.[1] This belief also stems from the over one hundred complaints from consumers concerning CHASE's rewards programs that are maintained on the Consumer Fraud Protection Bureau's online database that the agency launched on June 19, 2012. The identity of the Class members is ascertainable from records maintained by the

---

[1] *See*, for example: http://www.consumeraffairs.com/credit_cards/chase_credit_cards.html

Defendants and their agents.  In addition, the Class members may be located and informed of the pendency of this action by a combination of electronic bulletins, e-mail, direct mail and public notice, or other means, including records kept by CHASE.  The disposition of the claims of the proposed class members through this class action will benefit both the parties and the Court.

62.     Predominance of Common Questions – Fed. R. Civ. P. 23(a)(2), 23(b)(3).  There is a well-defined community of interest in the questions of law and fact involved affecting members of the Class.  The questions of law and fact common to the Class predominate over questions affecting only individual Class members, and include, but are not limited to, the following:

a.     Whether Defendants' scheme of taking the rewards points of cardholders not in default without fair compensation, as alleged in this Complaint, is deceptive, unlawful, and/or unfair in violation of state consumer protection law;

b.     Whether Defendants' misleading and deceptive conduct as alleged herein fraudulently induced Plaintiffs and the Class to enter into a contractual relationship;

c.     Whether Defendants' failure to inform cardholders that their earned points could be taken from them at anytime for any reason amounts to an omission of material fact.

d.     Whether Defendants' scheme of taking the rewards points of cardholders not in default without fair compensation, as alleged in this Complaint, unjustly enriched Defendants;

e.     Whether Plaintiffs and the Class members are entitled to restitution of all amounts acquired by Defendants through its common and uniform scheme;

f.     Whether Plaintiffs and the Class members are entitled to injunctive relief requiring the disgorgement of the value of rewards points wrongfully seized by Defendants;

g.     Whether Plaintiffs and the Class members are entitled to prospective injunctive relief enjoining Defendants from continuing to engage in the deceptive, unlawful, and unfair common scheme as alleged in this Complaint; and

h.     Whether Plaintiffs and the Class members are entitled to recover compensatory and punitive damages as a result of Defendants' wrongful scheme.

63.    Typicality – Fed. R. Civ. P. 23(a)(3).  Plaintiffs assert claims that are typical of the entire Class, having CHASE rewards points that had been earned wrongly taken from them without compensation.  Plaintiffs and the Class members have similarly suffered harm arising from CHASE's violations of law as alleged in this Complaint.

64.    Adequacy – Fed. R. Civ. P. 23(a)(4); 23(g)(1). Plaintiffs are adequate representatives of the Class because they fit within the class definition and have interests that are not antagonistic to or in conflict with the interests of the members of the classes they seek to represent.  Plaintiffs will prosecute this action vigorously for the benefit of the entire Class. Plaintiffs are represented by experienced and able attorneys that will serve effectively as class counsel.  Plaintiffs' Counsel has litigated numerous class actions, and Plaintiffs' Counsel intends to prosecute this action vigorously for the benefit of the entire Class.  Plaintiffs and Plaintiffs' Counsel can and will fairly and adequately protect the interests of all of the members of the Class.

65.    Predominance and Superiority – Fed. R. Civ. P. 23(b)(3).  The class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class members' claims would be impracticable and individual litigation would be unduly burdensome to the courts. Plaintiffs and the members of the Class have suffered harm as a result of CHASE's fraudulent, deceitful, unlawful, and unfair conduct.  Because of the size of each individual Class member's claim, no Class member could afford to individually seek legal redress for the wrongs identified in this Complaint.  Without the class action vehicle, the Class would have no reasonable remedy and would continue to suffer losses, as CHASE continues to

engage in the unlawful, unfair, and unconscionable conduct that is the subject of this Complaint, and CHASE would be permitted to retain the proceeds of its violations of law.

66.     Fed. R. Civ. P. 23(b)(2).  Further, individual litigation has the potential to result in inconsistent or contradictory judgments.  A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

<div align="center">

**COUNT ONE**
***Fraudulent Inducement***
**(As to Both Defendants)**

</div>

67.     Plaintiffs repeat and reallege all preceding paragraphs of the Complaint as though set forth at length herein.

68.     For many years, Defendant CHASE engaged in an unrelenting, pervasive media marketing campaign promoting their various credit card rewards programs.  Among other things, CHASE's marketing campaign promoted the idea that CHASE offered the most advantageous credit card rewards programs in the industry.  In addition, CHASE's marketing and promotional materials specifically indicated that their rewards points could be redeemed for cash and/or merchandise and that the rewards points would never expire.

69.     The "Ultimate Rewards Rules and Regulations," CHASE made similar material misrepresentations regarding the fact their credit card rewards points would not expire.

70.     These statements constituted misrepresentations of material fact.  CHASE knew or should have known of the falsity of these representations and made these representations with the intent to deceive its customers.

71.     Prior to applying and enrolling in the CHASE Rewards program, CHASE's advertising, marketing, and promotional materials never informed Plaintiffs that their rewards

points could be taken from them at anytime for any reason.  CHASE's failure to inform card holders that their points could be taken based on only CHASE's unfettered discretion amounts to an omission of material fact.

72.     CHASE knew that its customers chose their credit cards in significant part based on the rewards offered if the cards were used and CHASE had a duty to disclose the fact that Plaintiffs' rewards points could be taken from them at anytime at CHASE's sole discretion.

73.     Had this information not been concealed to Plaintiffs in CHASE's pervasive marketing campaign to encourage customers to purchase and utilize its rewards cards, Plaintiffs may not have chosen the Chase credit card, paid the enrollment fee or utilized the credit card to make as many purchases.

74.     Accordingly, CHASE's intentional material misrepresentations and omissions designed to fraudulently induce customers to choose CHASE rewards cards and spend money on these cards, in significant part, were the reason Plaintiffs and Class members applies for and utilized CHASE rewards credit cards.

75.     Plaintiffs and the members of the Class reasonably relied upon CHASE's misrepresentations and omissions, which were made with an intent to deceive Plaintiffs and induce them to enter into the contractual agreement, which caused them economic harm and injury.

## COUNT TWO
### *Violations of the Deceptive Trade Practices of State Statutes*
### *Prohibiting Unfair and Deceptive Acts and Practices*
### (As to JPMorgan Chase & Co.)

76.     Plaintiffs repeat and reallege all preceding paragraphs of the Complaint as though set forth at length herein.

77.     The state deceptive trade practices acts were enacted by various states following the passage of the Federal Trade Commission Act ("FTC Act"), which prohibits deceptive acts and practices in the sale of products to consumers.  In this regard, the state laws in this area are modeled on the FTC Act, and, therefore, are highly similar in content.

78.     JPMorgan's conduct, as described in the preceding paragraphs of this Complaint, constitutes unfair or deceptive acts or practices in trade or commerce in violation of the following state deceptive trade practices acts and other similar state statutes prohibiting unfair and deceptive acts and practices:

        a.      JPMorgan has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Code 1345.01 *et seq.*;

        b.      JPMorgan has engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla Stat. 501.201 *et seq.*

79.     More specifically, JPMorgan's unfair or deceptive and, thus, unlawful conduct consisted of taking duly earned rewards points of cardholders not in default without providing adequate compensation.

80.     JPMorgan's unlawful conduct as described herein caused injury to Plaintiffs and Class members equal to the value of the rewards points earned.

81.     The unfair or deceptive acts or practices of JPMorgan as alleged herein were willful or knowing violations of the laws set forth above.

82.     Plaintiffs and Class members have been injured by JPMorgan's unfair or deceptive acts or practices.

83.     Plaintiffs and Class members are also entitled to injunctive and declaratory relief including, without limitation, orders declaring JPMorgan's practices as alleged herein to be unlawful, unfair, unconscionable and/or deceptive, and enjoining JPMorgan from undertaking any further unlawful, unfair, unconscionable, and/or deceptive acts or omissions.

84.     Specifically, Plaintiffs seek injunctive relief enjoining JPMorgan from continuing to engage in the deceptive, unlawful, and unfair common scheme described in this Complaint.

85.     Plaintiffs ask the Court to grant the remedy of restitution to themselves and to all members of the Class whose rewards points were taken without compensation.   Specifically, Plaintiffs ask the Court to grant the following relief:

> a refund in an amount equal to the value of all rewards points wrongfully taken from Plaintiffs and the members of the Class.

86.     Plaintiffs and Class members are also entitled to disgorgement and restitution of Defendant's ill-gotten gains in the form of unlawful profits obtained from the conduct described in detail herein.

### COUNT THREE
### *Unjust Enrichment*
### (As to Both Defendants)

87.     Plaintiffs repeat and reallege all preceding paragraphs of the Complaint as though set forth at length herein.

88.     CHASE's conduct in collecting an annual fee from cardholders and then taking the rightfully earned reward points of cardholders at CHASE'S sole discretion at anytime without any form of compensation to cardholders amounts to an illusory promise rendering the rewards contract unenforceable.

89.     Should the Court determine that a valid, enforceable, and binding contractual relationship regarding the rewards points earned did not exist between the parties at any time, Plaintiffs bring this claim in the alternative for unjust enrichment.

90.     Because of the wrongful activities described above, including taking the rewards points of cardholders, not in default, without any compensation, Defendants have benefited financially because they have not paid out cardholders for rewards rightfully earned.

91.     CHASE was unjustly enriched by collecting an annual fee from cardholders and subsequently taking the rewards points of cardholders not in default without having paid any compensation to cardholders.

92.     Under principles of equity and good conscience, Defendants should not be permitted to keep this money.

93.     As a result of CHASE's actions resulting in its unjust enrichment, Plaintiffs and Class members suffered actual damages for which CHASE is liable.  CHASE's liability for those damages should be measured by the extent of its unjust enrichment.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for judgment:

A.     That the Court determines that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiffs are proper class representatives, and that the best practicable notice of this action be given to members of the Class represented by the Plaintiffs;

B.     Appointing Plaintiffs as the representatives of the National Class and their respective state subclass and their counsel as Class counsel;

C.     That judgment be entered against CHASE and in favor of Plaintiffs and the Class on the Causes of Action in this Complaint, for injunctive relief and restitution, declaratory judgment, and for actual, compensatory damages in an amount to be determined at trial;

D.     That judgment be entered imposing pre-judgment and post-judgment interest on damages, litigation costs and disbursements, and reasonable attorneys' fees against CHASE;

E.     For all other further relief as this Court may deem necessary and appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

<div style="margin-left:40%">

*s/ Ted Trief*
_____

Ted Trief, Esquire
Barbara Olk, Esquire
**TRIEF & OLK**
150 E. 58th St., 34th Floor
New York, NY 10155
Tel.: (212) 486-6060
Fax: (212) 317-2946
Email: ttrief@triefandolk.com
        bolk@triefandolk.com

Richard M. Golomb, Esquire
Kenneth J. Grunfeld, Esquire
Steven D. Resnick, Esquire
**GOLOMB & HONIK, P.C.**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Tel. 215-985-9177
Fax. 215-985-4169
Email: rgolomb@golombhonik.com
        kgrunfeld@golombhonik.com
        sresnick@golombhonik.com

*Attorneys for Plaintiffs and the Proposed Class*

</div>

**Dated:**