**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HARRY GAO and ROBERTA SOCALL, on behalf of themselves and all others similarly situated,<br><br>                                  Plaintiffs,<br><br>  -against-<br><br>JPMORGAN CHASE & CO. and CHASE BANK USA, N.A.,<br><br>                                Defendants. | No. 14 Civ. 4281 (PAC)<br>**ORAL ARGUMENT REQUESTED** |

**REPLY IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS THE
<u>THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

ARGUMENT ..........................................................................................................................2

    PLAINTIFFS FAIL TO STATE A CLAIM FOR FRAUDULENT INDUCEMENT ...............................2

    A.    Plaintiffs' Alleged Misstatements Fail To State A Claim .......................................2

        1.    *"Rewards points would never expire" (TAC ¶ 68)* .....................................2

        2.    *"The program allowed for 'unlimited earnings' such that there was no caps or limit on the amount of points earned" (Opp. 9)* ..........................3

        3.    *"Rewards points could be redeemed for cash and/or merchandise" (TAC ¶ 68)* ......................................................................................................3

        4.    *"A customer would 'get 1 point for every $1 you spend on every purchase'" (Opp. 9)* ...................................................................................4

    B.    Plaintiffs' Alleged Omission Fails To State A Claim .............................................5

    C.    Plaintiffs Cannot Rely On Discovery To Rectify Their Failure To Plead A Fraudulent-Inducement Claim ...............................................................................9

CONCLUSION .....................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bank of Am. v. Jarczyk*, 268 B.R. 17 (W.D.N.Y. 2001) ................................................................9

*Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189 (M.D.N.C. 1997) ............................................6

*City of Syracuse v. Loomis Armored US, LLC*,
    900 F. Supp. 2d 274 (N.D.N.Y. 2012) ....................................................................................10

*Dickens v. Chemical Bank*, 573 F. Supp. 1129 (S.D.N.Y. 1983) ..................................................10

*Duckett v. Williams*, 86 F. Supp. 3d 268 (S.D.N.Y. 2015) .............................................................3

*Feder v. Fortunoff, Inc.*, 494 N.Y.S.2d 42 (App. Div. 1985) ..........................................................9

*Hoffman v. AmericaHomekey, Inc.*, 23 F. Supp. 3d 734 (N.D. Tex. 2014) ....................................6

*In re Barclays Liquidity Cross & High Frequency Trading Litig.*,
    2015 U.S. Dist. LEXIS 113323 (S.D.N.Y. Aug. 26, 2015) .....................................................6

*In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003) ...............................10

*Karakus v. Wells Fargo Bank, N.A.*, 941 F. Supp. 2d 318 (E.D.N.Y. 2013) ..................................8

*Myers v. Dr. Phil Org.*, 2015 WL 476073 (D. Utah Feb. 5, 2015) ................................................10

*Natowitz v. Mehlman*, 542 F. Supp. 674 (S.D.N.Y. 1982) ............................................................10

*Sea Shelter IV, LLC v. TRG Sunny Isles V, Ltd.*, 2009 WL 692469
    (S.D. Fla. Mar. 17, 2009) .........................................................................................................9

*Weaver v. Chrysler Corp.*, 172 F.R.D. 96 (S.D.N.Y. 1997) ............................................................5

**RULES**

Fed. R. Civ. P. 9(b) ...............................................................................................................4, 5, 6, 9

The fraudulent-inducement claim in Plaintiffs' third amended complaint should be dismissed with prejudice.

Distinct from the third amended complaint, in their opposition brief, Plaintiffs now purport to advance four misstatements allegedly constituting fraudulent inducement: (1) "that there was 'no expiration on points'"; (2) "that the program allowed for 'unlimited earnings' such that there was no caps or limit on the amount of points earned"; (3) "that points 'have a real, ascertainable value and could have been redeemed for cash or merchandise'"; and (4) "that a customer would 'get 1 point for every $1 you spend on every purchase.'" Opp. 9, Dkt. 49. If the first two look familiar, that is because this Court already rejected them. Plaintiffs concede that fact, but "reassert their original position" without further explanation. *Id.* And Plaintiffs say little regarding the other two purported misstatements, failing to reconcile their cursory arguments with the allegations in the third amended complaint, which make clear that neither constitutes actionable fraud.

As for Plaintiffs' one alleged omission—that CBUSA's "advertising, marketing, and promotional materials never informed Plaintiffs that their rewards points could be taken from them at anytime for any reason" (TAC ¶ 71)—their theory fails for a number of reasons, all of which are set forth in Defendants' opening brief and most of which Plaintiffs simply ignore. Most notably, there was no omission.

In a telling conclusion, Plaintiffs now assert that they "require affirmative discovery to *better identify* the precise misstatements made, *when* they were made, and *potentially identify additional misstatements*." Opp. 10 (emphasis added). This argument has no basis in the law and works only to underscore that, after four opportunities to plead their claim, Plaintiffs' "very best" efforts (Hr'g Tr. 4, Aug. 5, 2015) are insufficient to state a fraudulent-inducement claim.

1

# ARGUMENT

**PLAINTIFFS FAIL TO STATE A CLAIM FOR FRAUDULENT INDUCEMENT**

### A. Plaintiffs' Alleged Misstatements Fail To State A Claim

As Defendants showed in their motion to dismiss, none of the three misstatements alleged in Plaintiffs' third amended complaint—(1) "rewards points would never expire" (TAC ¶ 68); (2) "rewards points could be redeemed for cash and/or merchandise" (*id.*); and (3) CBUSA "offered the most advantageous credit card rewards programs in the industry" (*id.*)—constitutes actionable fraud. *See* MTD 5-7, Dkt. 48. Plaintiffs concede the point as to the third purported misstatement, never mentioning it in their opposition. They do little more as to the first and second, but then purport to add two additional misstatements into the mix, the first of which the Court already rejected: "that the program allowed for 'unlimited earnings' such that there was no caps or limit on the amount of points earned"; and "that a customer would 'get 1 point for every $1 you spend on every purchase.'" Opp. 9. All of them fail.

#### 1. "Rewards points would never expire" (TAC ¶ 68)

Plaintiffs concede that this Court rejected the fraudulent-inducement claim in their first amended complaint on a materially identical theory. MTD 5; Opp. 9. Indeed, Plaintiffs do not even reference in their opposition the statement challenged in the third amended complaint, *i.e.*, "rewards points would never expire." TAC ¶ 68. Instead, they quote the *exact same statement* they acknowledge this Court already "held" was not "'untrue'"—*i.e.*, "that there was 'no expiration on points'"—and conclude: "Plaintiffs *reassert their original position* on the above misstatement[]." Opp. 9 (emphasis added). The Court has already ruled on this very issue and should reject this meritless "reassert[ion]" out of hand.

> 2. *"The program allowed for 'unlimited earnings' such that there was no caps or limit on the amount of points earned" (Opp. 9)*

Plaintiffs also purport to "reassert" another "original position." Opp. 9. Specifically, Plaintiffs "reassert," without any reasoning, that the statement that "the program allowed for 'unlimited earnings' such that there was no caps or limit on the amount of points earned" constitutes an "actionable misstatement[]." Opp. 9. That is also meritless. As Plaintiffs concede, this Court also already "held" that that statement is not "'untrue.'" Opp. 9.

> 3. *"Rewards points could be redeemed for cash and/or merchandise" (TAC ¶ 68)*

Plaintiffs do not dispute that their own allegations confirm the truth of this statement. MTD 5-6; Opp. 9-10. Nor could they: Plaintiffs specifically allege that they "[i]n fact … had in the past redeemed a portion of their CHASE Ultimate Rewards points without difficulty." TAC ¶ 9; *see also* Ex. E to TAC, Dkt. 43-5 at 3 (rewards summary for Roberta Socall, reflecting "4,000 Points Redeemed"). That dispositive admission, which Plaintiffs ignore, confirms the truth of the statement that points could be redeemed.

Plaintiffs appear to suggest that their misstatement theory somehow relates to an allegation made earlier in their complaint "that points 'have a real, ascertainable value.'" Opp. 9 (quoting TAC ¶ 9). But Plaintiffs fail to mention that the quoted language is *their own*. TAC ¶ 9. Plaintiffs never purport to attribute it to Defendants, and they of course cannot base a fraudulent-inducement claim on a statement they themselves made as legal argument. *See, e.g., Duckett v. Williams*, 86 F. Supp. 3d 268, 274 (S.D.N.Y. 2015) ("A plaintiff seeking to prevail on a fraudulent inducement claim must prove ' … that *the defendant* made a representation[.]'" (emphasis added)). And to the extent Plaintiffs contend that their argument here relates to their later assertion that Defendants misrepresented the "value" of points as "an asset worth one penny each" (Opp. 9), that fails for the reasons discussed below.

3

> 4. "A customer would 'get 1 point for every $1 you spend on every purchase'" (Opp. 9)

Finally, Plaintiffs challenge the statement that "a customer would 'get 1 point for every $1 you spend on every purchase.'" Opp. 9. Plaintiffs' theory on this purported misstatement is unclear, but in all events meritless.

As Plaintiffs' own allegations confirm, it is true that customers "get 1 point for every $1 [they] spend on every purchase." Ex. D to TAC, Dkt. 43-4 at 3. Indeed, Plaintiffs admit that "[t]he CHASE Ultimate Rewards programs allowed cardholders to earn one (1) point or a 1% rebate for each dollar charged to the card" (TAC ¶ 38; *see id.* ¶ 7), and that they themselves "earned" such "points" (*id.* ¶ 9). So Plaintiffs' theory appears to be premised on the proposition stated in their brief—but not alleged in their complaint—that "Chase" has somehow "advertise[d] that a reward point is an asset worth one penny each." Opp. 9.

Failing even to attempt to satisfy Rule 9(b), Plaintiffs do not cite, or even identify, any specific "advertis[ing]" in support of this theory. Moreover, the very advertising they purport to have relied on says the opposite. Exhibits C and D to Plaintiffs' third amended complaint—the advertising materials Plaintiffs say they received (MTD 8)—state: "Points earned … *have no cash value*[.]" Ex. D to TAC, Dkt. 43-4 at 6 (emphasis added); *see* Ex. C to TAC, Dkt. 43-3 at 7 ("Miles earned … *have no cash value*[.]" (emphasis added)).

Finally, even assuming some unspecified advertising materials had stated that one point was "worth one penny" as Plaintiffs assert (Opp. 9), there would be nothing untrue about that statement. Plaintiffs do not allege, nor could they allege, that CBUSA ever declined any attempt by Plaintiffs to redeem any points that they still possessed for a "value" of "$0.01 per point"

(*id.*). Once a point is forfeited, however, it is worth nothing. Defendants did not make any false statements.[1]

### B. Plaintiffs' Alleged Omission Fails To State A Claim

Although Plaintiffs declare that the third amended complaint "abounds with specific averments regarding Defendants' purposeful omissions" (Opp. 5), they base their theory on one alleged omission only, re-alleged repeatedly throughout the complaint: that CBUSA's "advertising, marketing, and promotional materials never informed Plaintiffs that their rewards points could be taken from them at anytime for any reason" (TAC ¶ 71; *see* Opp. 5). This theory fails, both under Rule 9(b) and because Defendants never omitted that fact.[2]

To start, Plaintiffs misunderstand Defendants' argument under Rule 9(b). Plaintiffs frame Defendants' argument as an assertion that Plaintiffs "must identify *every* piece of promotional material within [CBUSA's] 'pervasive mass advertising' campaign" that includes this alleged omission. Opp. 7 (emphasis added). That is not what Defendants argue. *See* MTD 7-8. Defendants' argument, grounded squarely in Rule 9(b), is this: Plaintiffs failed to "specifically identify" *any* "advertisements[] and promotional materials that [allegedly] omitted the reference" to the forfeiture of rewards points—not a single one. *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 102 (S.D.N.Y. 1997); *see* MTD 7-8. As even the cases upon which Plaintiffs rely confirm, Plaintiffs' vague, unspecified invocation of CBUSA's "advertising, marketing, and

---

[1] Curiously, Plaintiffs suggest that, even if all of their purported misstatements independently fail as a matter of law (as they do), one or perhaps more may still somehow survive "in conjunction and in combination" with another. Opp. 10. Plaintiffs cite nothing in support of this novel approach to fraudulent inducement, and there is nothing to cite. Just as zero plus zero does not equal one, a true statement plus a true statement does not equal a false statement.

[2] In Plaintiffs' pre-motion letter accompanying their request for leave to file the third amended complaint, Plaintiffs asserted they were pleading "the additional fact that Chase charges an annual fee" to "plead more accurately and more completely [their] claim regarding fraudulent inducement by omission." Dkt. 40 at 1. Plaintiffs do not dispute that any such annual-fee-based theory is meritless (MTD 10), nowhere mentioning any "fee omission" theory in their opposition.

promotional materials" (TAC ¶ 71) does not satisfy their heightened pleading requirement. *See Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 195, 197 (M.D.N.C. 1997) (holding that fraud-by-omission claim must "comply with … Rule 9(b)," and rejecting the plaintiff's claim because, among other reasons, it "fail[ed] the particularly requirement of Rule 9(b) with respect to the content of the information withheld"), *cited at* Opp. 6; *see also In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 2015 U.S. Dist. LEXIS 113323, at *62 (S.D.N.Y. Aug. 26, 2015) ("Absent any explanation of why [a] chart [in promotional materials] was misleading, it plainly cannot serve as the basis for a concealment claim."), *cited at* Opp. 3, 7.[3]

Presumably recognizing that the law on Rule 9(b) is against them, Plaintiffs now at least attempt to ground their omission theory in "certain promotional materials" "attached to the [c]omplaint"—referencing "Ex. D and E to TAC." Opp. 7. But this last-ditch effort fails for at least three reasons.

First, Exhibit E—a "rewards summary" for Roberta Socall describing her "point balance" *after* she entered into the credit-card contract (Dkt. 43-5 at 2, 3)—cannot serve as the basis of a fraudulent-inducement claim. Order 9 (fraudulent-inducement claim must be "based on misrepresentations made *prior to formation of the contract*" (emphasis added)); *see also* Opp. 5 (Plaintiffs acknowledging that they must rely on "pre-agreement marketing and promotional materials"). The only promotional materials Plaintiffs ever assert to have received *before* the formation of the contract—and thus the only promotional materials upon which they can attempt

---

[3] Plaintiffs assert that "[c]ourts have acknowledged that fraud by omission is, by its very nature, difficult to plead with particularity." Opp. 6 (citing *Breeden*, 171 F.R.D. at 195; *Hoffman v. AmericaHomekey, Inc.*, 23 F. Supp. 3d 734, 745 (N.D. Tex. 2014)). If Plaintiffs are suggesting that this purported "difficult[y]" works in their favor, the two cases on which they rely stand for the opposite proposition, dismissing the fraud claims at issue for failure to comply with Rule 9(b). *See Breeden*, 171 F.R.D. at 195-96; *Hoffman*, 23 F. Supp. 3d at 747 (dismissing fraud-by-omission claim because the plaintiffs' "allegations do not meet the heightened pleading standard of Rule 9(b)").

to base their fraudulent-inducement claim (Order 9)—are Exhibits C and D to the third amended complaint (*see* MTD 8 (citing Opp. to 1st MTD 11, Dkt. 28)).

Second, whether Plaintiffs rely on Exhibit C (which they do not mention in their opposition), Exhibit D, or both, the result is the same: There was no omission. Plaintiffs assert that "nowhere … does Chase inform the consumer that it can take your earned points at any time for any reason." Opp. 7. That is wrong, as Defendants explained in their opening brief and Plaintiffs conspicuously fail to address. Exhibits C and D expressly disclose:

> If … your Account is closed *for any reason*, … we reserve the right … to cause you to forfeit any points in your Account. If your points are forfeited *for any reason*, we will not reinstate these points to your Account. If your Account is closed *for any reason*, your membership in the Program will be terminated.

Ex. D to TAC, Dkt. 43-4 at 6 (emphasis added); *see* Ex. C to TAC, Dkt. 43-3 at 7 ("If your Account is closed *for any reason*, your membership in the Program will be terminated and the total balance of your accumulated miles will be forfeited. … If your miles are forfeited *for any reason*, we will not reinstate these miles to our Account." (emphasis added)); MTD 8.

Plaintiffs do not, and could not, dispute that the disclosures in these promotional materials are, as relevant here, materially identical to those in the parties' contract governing rewards points, *i.e.*, the Ultimate Rewards Program Rules and Regulations:

> If … your Account is closed *for any reason*, …we reserve the right … to cause you to forfeit any points/rebates in your Account. If your points/rebates are forfeited *for any reason*, we will not reinstate these points/rebates to your Account. If your Account is closed *for any reason*, your membership in the Program will be terminated.

Ex. A to TAC, Dkt. 43-1 at 2 (emphasis added). Plaintiffs' only response is to assert, without explanation, that a consumer would not have been "alerted" to CBUSA's forfeiture authority without reading "the Rewards Program's Rules and Regulations in conjunction with the Chase Cardholder Agreement." Opp. 5. That is wrong. The language is in the promotional materials

7

themselves. *See supra* p. 7. And as to Plaintiffs' confusing argument regarding a consumer reading the Cardmember Agreement, Plaintiffs fail to identify any language in the Cardmember Agreement that is necessary to further "alert[]" a consumer to CBUSA's forfeiture authority. None is necessary; the language is clear. Indeed, this Court's prior order confirms that point: this Court already held that the *Program Rules and Regulations*—and thus the materially identical disclosures in the promotional materials—"*explicitly* provide[] for forfeiture," permitting Defendants "'to take the Plaintiffs' earned rewards points *for no reason*.'" Order 7 (emphasis added); *see* Order 5-6 (quoting the Program Rules and Regulations); MTD 8. The Court nowhere even referenced the Cardmember Agreement in reaching that holding, nor did it need to do so.

Third, Plaintiffs' claim also fails because they cannot allege reasonable reliance. MTD 9-10. Plaintiffs fault Defendants for "re-argu[ing] that the Third Amended Complaint fails to allege justifiable reliance." Opp. 8. Defendants are doing no such thing. This Court rejected Defendants' reliance argument regarding the first amended complaint only as to Plaintiffs' *misrepresentation* theory. *See* Order 9 & n.5. At that time, Plaintiffs did not allege an *omission*, and thus the Court had no occasion to rule on a reliance argument in the context of an omission. *See* Order 9. Plaintiffs then simply quote back allegations in their complaint. Opp. 8-9. Those allegations are irrelevant, as a matter of law, as the cases Defendants cite and Plaintiffs ignore make clear. *See* MTD 9-10. Plaintiffs cannot have reasonably relied on any omission in the promotional materials as the basis for their fraudulent-inducement claim—again, as a matter of law—where the very contract that they entered into "explicitly provides for forfeiture." Order 7; *see, e.g., Karakus v. Wells Fargo Bank, N.A.*, 941 F. Supp. 2d 318, 345 (E.D.N.Y. 2013) (rejecting the "familiar and meritless theme" of claiming an actionable omission where the

8

material terms "were unambiguously provided in the closing documents"); *accord, e.g.*, *Sea Shelter IV, LLC v. TRG Sunny Isles V, Ltd.*, 2009 WL 692469, at *6 (S.D. Fla. Mar. 17, 2009) (plaintiff "cannot maintain a cause of action in fraud for failure to disclose information that was in fact disclosed in the contract").

Plaintiffs finally say that consumers are provided with the Program Rules and Regulations and Cardmember Agreement "only … *after* they join the rewards points program." Opp. 6. That is both immaterial and wrong. It is immaterial because, as discussed above, the "omission" Plaintiffs challenge was in fact disclosed in the pre-application promotional materials they attach to their complaint. And it is wrong because Plaintiffs did not "join the rewards points program" merely by applying for their credit card; they joined the program the first time they *used* the card. *See Bank of Am. v. Jarczyk*, 268 B.R. 17, 22 (W.D.N.Y. 2001) ("[T]he issuance of a credit card is simply an *offer* … Until that offer is accepted by the cardholder, by using his credit card, no contract has been formed."); *accord, e.g.*, *Feder v. Fortunoff, Inc.*, 494 N.Y.S.2d 42, 42 (App. Div. 1985). And Plaintiffs concede that the "contract" "terms" were "sent to … customers along with the credit card." Opp. to 1st MTD 13 n.10.

### C. Plaintiffs Cannot Rely On Discovery To Rectify Their Failure To Plead A Fraudulent-Inducement Claim

Plaintiffs no longer press an argument that they pleaded a fraudulent-inducement claim merely by "attach[ing] promotional materials as exhibits to the amended complaint with the misleading statements." Dkt. 36 at 3. As Defendants demonstrated, and Plaintiffs say nothing in response, any such argument is barred by Rule 9(b) and the law of the case. MTD 10-12.

But Plaintiffs now suggest a more dubious legal theory: that they "require … discovery" to meet their *pleading* obligations, and, consequently, "[d]ismissing this claim now … is inappropriate as a matter of law." Opp. 10. Specifically, Plaintiffs assert that they "require

9

affirmative discovery to *better identify* the precise misstatements made, *when* they were made, and *potentially identify additional misstatements.*" *Id.* (emphasis added). That is not how litigation works: Plaintiffs "cannot rely on later discovery to rectify" a failure to plead their claim; rather, they "'must know what [their] claim is when [they] file[] it.'" *Natowitz v. Mehlman*, 542 F. Supp. 674, 676 (S.D.N.Y. 1982); *see Dickens v. Chemical Bank*, 573 F. Supp. 1129, 1133 (S.D.N.Y. 1983) ("Simply put, a plaintiff 'must know what his claim is when he files it'; he 'cannot rely on later discovery to rectify this defect[.]'" (quoting *Natowitz*, 542 F. Supp. at 676)); *accord, e.g.*, *Myers v. Dr. Phil Org.*, 2015 WL 476073, at *7 (D. Utah Feb. 5, 2015) ("Plaintiffs may not rely on the need for discovery to avoid their Rule 9(b) pleading obligations."). Indeed, as a case on which Plaintiffs rely cautions: "[A] pure fishing expedition is forbidden by Rule 11, which is the law of the land." *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 326 n.46 (S.D.N.Y. 2003), *cited at* Opp. 4.[4]

## CONCLUSION

For the reasons above, the fraudulent-inducement claim in the third amended complaint claim should be dismissed with prejudice.

---

[4] In support of the proposition that "[d]ismissing this claim now … is inappropriate as a matter of law," Plaintiffs cite (at 10) only one case: *City of Syracuse v. Loomis Armored US, LLC*, 900 F. Supp. 2d 274, 292 (N.D.N.Y. 2012). That is an odd, inapposite cite. The passage upon which Plaintiffs rely addressed when, for purposes of the statute of limitations on a fraud claim, the plaintiff "'could, with due diligence, have discovered' the fraud." *Id.* In other words, it is about the *fraud* discovery rule—not *discovery*.

Dated: New York, New York  Respectfully submitted.
November 16, 2015

/s/ Noah A. Levine
Noah A. Levine
Alan E. Schoenfeld
Hanna Baek
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800 (phone)
(212) 230-8888 (fax)
noah.levine@wilmerhale.com
alan.schoenfeld@wilmerhale.com
hanna.baek@wilmerhale.com

*Attorneys for Defendants JPMorgan Chase & Co. and Chase Bank USA, N.A.*